**Eric M. PICHT and Shayleen
M. Picht, Plaintiffs,**

v.

**Jon R. HAWKS, George E. Warner and
Jon R. Hawks, Ltd., Defendants.**

**No. CIV. 98–1802 JMR/FLN.**

United States District Court,
D. Minnesota.

Aug. 27, 1999.

Thomas J. Lyons, Jr., Consumer Justice Center, St Paul, MN, for plaintiff.

Gregory John Johnson, Johnson & van Vliet, St Paul, MN, for Defendant.

## ORDER

NOEL, Chief United States Magistrate Judge.

**THIS MATTER** came before the undersigned United States Magistrate Judge on August 20th, 1999, on the parties' cross-motions for summary judgment [# 17 and # 21]. Eric L. Crandall appeared for Plaintiffs. Ted Sullivan appeared for Defendants. Plaintiffs allege that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), while attempting to collect debts allegedly owed by Plaintiffs.

## I. BACKGROUND

The Plaintiffs, Eric M. Picht and Shayleen M. Picht, are married and reside in Washington County, Minnesota. *Stipulation of Facts* at 1. Defendant Jon R. Hawks, Ltd., is a Minnesota corporation with offices located at Suite 535, 7301 Ohms Lane, Minneapolis, Minnesota. *Id.* The other Defendants are employees of Jon R. Hawks, Ltd. *Id.* Defendants are engaged in the collection of consumer debts on behalf of third parties via mail and telephone. *Id.*

On April 29, 1997, Shayleen Picht wrote a check to SuperAmerica in the amount of $16.00. *Id.* at 2. She wrote another check for $16.00 to SuperAmerica on May 7, 1997. *Id.* Eric Picht wrote a check to Freedom gas station for $7.61 on April 29, 1997, and one to Big Wheel Rossi for $10.64 on April 30, 1997. *Id.* All of these checks were subsequently dishonored. *Id.*

CheckRite assumed responsibility for the collection of these debts. *Id.* The Pichts attempted to satisfy their obligations by mailing a check to CheckRite in the amount of $50.25 on July 30, 1997. *Id.* Enclosed with the check was a letter promising to pay the remainder of the funds requested by CheckRite by August 15, 1997. Jon R. Hawks sent a letter to Ms. Picht on August 6, 1997. *Id.* This letter offered to settle the claim on one of the Super America checks for $116.00. *See. Exhibit C to Stipulation of Facts.* On August 13, 1997, Jon R. Hawks returned Ms. Picht's $50.25 check to her. *See Exhibit D to Stipulation of Facts.*

Jon R. Hawks, Ltd., served the Pichts with a summons and complaint on January 14, 1998. *Id.* at 2. On February 9, 1998, Mr. Warner sent a letter to the Pichts enclosing a "Garnishment Exemption Notice and Notice of Intent to Garnish Earnings Within Ten Days," a "Debtor's Exemption Claim Notice," and a copy of the affidavit of service for the summons and complaint. *Id. See Exhibits F, G, and H.* This letter advised Plaintiffs that they could settle their claim for $820.25, and that this amount would increase by approximately $150.00 if their wages were garnished. *Exhibit F.* On February 20, 1998, Mr. Warner sent the Pichts a "Garnishment Summons and Notice to Debtor," two "Exemption Notices," a "Disclosure Form," "Garnishment/Execution Interrogatories," and a copy of the "Affidavit of Service of Summons and Complaint." *See Exhibits I, J, K, L, M, and N.* Exhibit I, a form letter, did not specify how much the Pichts owed although a space was set aside for that purpose. *See Exhibit I.* Exhibits J–N were mailed to the Pichts' bank in Hudson, Wisconsin, by certified mail on February 26, 1998. *Stipulation of Facts* at 3.

Plaintiffs' bank froze the $26.31 in Plaintiffs' account on February 26, 1998, and released the funds to Plaintiffs on March 2, 1998. *Id.*

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.,* 980 F.2d 1217, 1219 (8th Cir.1992). Any inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving

party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Once the moving party has carried its burden of demonstrating the absence of a genuine issue of material fact, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

▆▆▆ The FDCPA is a remedial, strict liability statute which was intended to be applied in a liberal manner. *See McGowan v. King, Inc.,* 569 F.2d 845, 848 (5th Cir.1978). Proof of deception or actual damages is not necessary to make a recovery under the FDCPA. *Baker v. G.C. Services Corporation,* 677 F.2d 775, 780 (9th Cir.1982); *Riveria v. MAB Collections, Inc.,* 682 F.Supp. 174, 175 (W.D.N.Y. 1988). Proof of one violation is sufficient to support a finding of summary judgment in favor of the Plaintiff in an FDCPA action. *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2nd Cir.1993); *Cacace v. Lucas,* 775 F.Supp. 502, 505 (D.Conn.1990). Whether the consumer owes the alleged debt has no bearing on a suit brought pursuant to the FDCPA. *McCartney v. First City Bank,* 970 F.2d 45 (5th Cir.1992); *Baker v. G.C. Services Corp.,* 677 F.2d at 777 (9th Cir.1982). Determinations of whether the debt collector's conduct has violated the FDCPA are made from the perspective of the "least sophisticated consumer." *FTC v. Raladam Co.,* 316 U.S. 149, 151–52, 62 S.Ct. 966, 968–69, 86 L.Ed. 1336 (1942); *Exposition Press, Inc. v. FTC,* 295 F.2d 869, 873 (2d Cir.1961), *cert. denied,* 370 U.S. 917, 82 S.Ct. 1554, 8 L.Ed.2d 497 (1962); *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1172–1175 (11th Cir.1985).

## B. Issues

### 1. Did Defendants' Prejudgment Garnishment of Plaintiffs' Bank Account Violate the FDCPA?

▆▆ Several statutes must be read in conjunction to determine whether the prejudgment garnishment of Plaintiffs' checking account was permissible. Minn.Stat. § 571.71 provides that:

> As an ancillary proceeding to a civil action for the recovery of money, a creditor may issue a garnishment summons as provided in this chapter against any third party in the following instances... (2) at any time 40 days or more after service of the summons and complaint upon the debtor in the civil action when a judgment by default could have, but has not, been entered pursuant to Rule 55.01(a) of the Minnesota Rules of Civil Procedure for the District Courts. No filing of a pleading or other documents by the creditor is required to issue a garnishment summons under this clause; however, the creditor must comply with the service requirement of section 571.72, subdivision 4...

Minn.Stat. § 571.71. In turn, Rule 55.01(a) of the Minnesota Rules of Civil Procedure for the District Courts states that:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend within the time allowed therefor by these rules or by statute, and that fact is made to appear by affidavit, judgment by default shall be entered against that party as follows:
>
> (a) When the plaintiff's claim against a defendant is upon a contract for the payment of money only, or for the payment of taxes..., the court administrator, upon request of the plaintiff and upon affidavit of the amount due, which may not exceed the amount demanded in the complaint...shall enter judgment for the amount due and costs against the defendant.

Minn.R.Civ.P. 55.01(a). This limitation on the ability of the clerk of court to enter default judgment has been approved by the Minnesota Supreme Court. *See Sommers v. Thomas,* 251 Minn. 461, 88 N.W.2d 191, 193–94 (1958) ("In the clearest terms the clerk of municipal court is restricted to entering judgment by default to cases involving contracts for the payment of mon-

ey and to those cases only"). To qualify as a default judgment there can be no discretionary determination of the amount due. *Id.; MacKenzie v. Belisle,* 338 N.W.2d 33, 37 (Minn.1983)(in lease action, claim for amount due under entire lease despite fact that less than half of the lease term had passed meant that claim was not "a contract for money only").

The parties agree that more than 40 days passed between the service of the Summons and Complaint by Defendants in the underlying collection action and the prejudgment garnishment of Plaintiffs' account. Accordingly, resolution of this issue depends upon determination of whether the parties' interactions constitute "a contract for the payment of money only," and whether a definite contractual sum is involved.

The checks written by Plaintiffs constitute contracts for the payment of money only. In *In re Anderson,* 181 B.R. 943 (Bankr.D.Minn.1995), the court held that bounced checks are "acknowledged contractual obligations." As such, there can be no real argument that Plaintiff's checks are not contracts for the payment of money. If this were only an action for breach of contract, that conclusion might be determinative of this entire issue. It is not, however, as Defendants added claims under Minn.Stat. §§ 332.50 and 332.51. These claims derive from statutory causes of action and may, for that reason alone, constitute claims other than those for money only. Determination of that issue is unnecessary, however, because the statutory claims themselves require an element of judicial fact-finding, placing them outside the parameters of Minn.Stat. § 55.05. Minn.Stat. § 332.50 provides penalties for the issuance of a worthless check. It states, *inter alia,* that:

Subd. 2. Acts constituting. (a) Whoever issues any check that is dishonored and is not paid within 30 days after mailing a notice of dishonor that includes a citation to this section and section 609.535, and a description of the penalties contained in these sections, in compliance with subdivision 3, is liable

to the holder for: (1) the amount of the check plus a civil penalty of up to $100 or up to 100 percent of the value of the check, whichever is greater; (2) interest at the rate payable on judgments pursuant to section 549.09 on the face amount of the check from the date of dishonor; and (3) reasonable attorney fees if the aggregate amount of dishonored checks issued by the issuer to all payees within a six-month period is over $1,250.

Minn.Stat. § 332.50. This statute, on its face, permits discretion in its assessment of civil penalties, up to the greater of $100 or 100 percent of the value of the check. Minn.Stat. § 332.51 contains similar provisions, providing that, *inter alia:*

Subdivision 1. Liability for theft of property. A person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100 percent of its value when stolen, whichever is greater. If the property is merchandise stolen from a retail store, its value is the retail price of the merchandise in the store when the theft occurred.

Minn.Stat. § 332.51. Although this statute does not call for as much judicial fact-finding as Minn.Stat. § 332.50, there is still a measure of decision-making that falls outside the purview of the clerk's office. Specifically, if the value of the property is greater than $50, the judge must make a finding as to the amount of punitive damages, "up to 100 percent of its value."

In *Sommers v. Thomas,* 88 N.W.2d at 194 (Minn.1958), the Minnesota Supreme Court held that where a plaintiff prayed for relief of approximately $1,000, which was the value of the furniture from his apartment that he claimed his landlord wrongfully converted, the action sounded in tort. This holding compelled the further conclusion that the clerk's office was not authorized to enter a default judgment in the action. *Id.* Accordingly, the Minne-

sota Supreme Court vacated the judgment and ordered that a hearing be held.

The underlying rationale behind the *Sommers* decision, namely that the clerk of court should not enter a judgment when the amount of that judgment is in dispute, applies equally here even though the instant action does not sound in tort. By entering default judgment, the clerk of court effectively makes a judicial determination as to the appropriate amount of penalties and punitive damages to assign. Such determinations should not be made by the clerk's office, particularly in cases such as this one where Defendants claimed the maximum penalty permitted by statute.

Given the variability in the amount of penalties that could have been assigned, it is clear that Defendants' claims were more than "contracts for the payment of money only." Accordingly, the clerk of court should not have entered default judgment against the Plaintiffs. Furthermore, the strict liability nature of the FDCPA compels the conclusion that Defendant violated the FDCPA by pursuing a garnishment based the improperly entered default judgment.

### 2. Do Defendants' Other Actions Constitute Violations of the FDCPA?

■ A single violation exposes the Defendant to liability under the FDCPA. As the Court has held that Defendants' actions in obtaining a garnishment constitute an FDCPA violation, it need not consider whether Defendant's other actions also violate the statute. Regardless of the number of violations in a single collection action, the FDCPA limits damages to $1,000. 15 U.S.C. § 1692k(a)(2)(A).

### III. ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Partial Summary Judgment [# 17] is **GRANTED**;

2. Defendants' Motion for Summary Judgment [# 21] is **DENIED**.