# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1270

_____

| | | |
|---|---|---|
| Eric M. Picht, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Jon R. Hawks, Ltd., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 16, 2000
Filed: January 9, 2001

_____

Before McMILLIAN, HEANEY, and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Jon R. Hawks, Ltd., (Hawks) appeals the denial of its motion for summary judgment and the decision of the District Court[1] to grant partial summary judgment to the plaintiff, Eric Picht. We affirm.

_____

[1]The Honorable Franklin L. Noel, United States Magistrate Judge for the District of Minnesota, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

I.

On April 29, 1997, Eric Picht deposited his paycheck in the bank account he shared with his wife, Shayleen Picht. Between April 29 and May 7, 1997, the Pichts wrote four checks, totaling $50.25, on this account. Eric Picht's paycheck was dishonored, and as a consequence the Pichts' bank dishonored those four checks. The businesses receiving these dishonored checks submitted them to CheckRite for collection. CheckRite engaged the law firm of Jon R. Hawks, Ltd., as counsel to pursue collection from the Pichts of the amount due on each check plus additional costs.

Hawks's preliminary collection attempts failed. In January 1998, Hawks served a summons and complaint on the Pichts in a collection action brought in Minnesota state court. In that suit, CheckRite claimed damages of $50.25 (the face value of the dishonored checks), $120 (for collection costs pursuant to Minn. Stat. § 332.50(2)(a) (1998)), $200 (for statutory damages for civil theft pursuant to Minn. Stat. § 332.51), $400 (for civil penalties pursuant to Minn. Stat. § 332.50(2)(b)(1)), and an unspecified sum for statutory costs and disbursements. The Pichts did not answer the summons and complaint.[2]

In February 1998, before the state court entered judgment in that suit, Hawks mailed the Pichts a "Notice of Intent to Garnish" pursuant to Minn. Stat. § 571.72. Shortly thereafter, Hawks served the Pichts and the Pichts' bank with a "Garnishment Summons and Notice." This summons stated that the Pichts were in default pursuant

---

[2]After the Pichts filed this federal action in July 1998, the Minnesota state court entered judgment against the Pichts, assessing a civil penalty of $40 per dishonored check.

to Minnesota Rule of Civil Procedure 55.01, and the summons claimed a balance owed of $979.15. This balance included $400 in civil liability penalties—$100 for each dishonored check.[3] Because of this summons, the Pichts' bank froze the funds in their account.

In July 1998, the Pichts filed this suit in federal district court, seeking damages for alleged violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 (1994 & Supp. IV 1998). The Pichts' suit claimed that Hawks's use of the prejudgment garnishment procedure violated Minnesota law and thus violated the FDCPA. The parties filed cross-motions for summary judgment. Concluding that Hawks had violated Minnesota law, and thus had also violated the FDCPA, the District Court granted the Pichts' motion for partial summary judgment. Hawks appeals.

## II.

Hawks claims that the District Court should have denied the Pichts' motion for partial summary judgment and granted Hawks's motion for summary judgment. Specifically, Hawks argues that Minnesota law allows it to use the garnishment procedure in the manner that Hawks used it against the Pichts. We review a district court's interpretation of state law and its grant of summary judgment de novo. Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991) (interpretation of state law); Michalski v. Bank of Am. Ariz., 66 F.3d 993, 995 (8th Cir. 1995) (summary judgment).

The FDCPA prohibits, inter alia, the use of debt collection practices that violate state law. See 15 U.S.C. § 1692e(5) (prohibiting debt collectors from using "false, deceptive, or misleading representation or means in connection with the collection of any debt," which specifically includes "[t]he threat to take any action that cannot legally

---

[3]This is the maximum civil penalty allowed by Minn. Stat. § 332.50(2)(b)(1) when the dishonored check's face value is less than $100.

be taken"). The Act provides a damages remedy to debtors who have been subject to such unlawful collection practices. See id. § 1692k. Eric Picht, the sole appellee,[4] alleges that Hawks violated Minnesota state law in its attempt to collect on the worthless checks written by the Pichts. The parties agree on the material facts; thus, we must decide the lawfulness of Hawks's collection procedures under Minnesota law. Our determination depends upon three provisions of Minnesota law: the worthless check statute; the garnishment statute;[5] and Minnesota Rule of Civil Procedure 55.01, which concerns entry of default judgments in civil actions.

Minnesota's worthless check statute provides for the imposition of a civil penalty "of up to $100 or the value of the check, whichever is greater," for each check dishonored. Minn. Stat. § 332.50(2)(b)(1) (emphasis added). The Minnesota garnishment statute allows for a garnishment action "[a]s an ancillary proceeding to a civil action for the recovery of money." Id. § 571.71. To commence the proceeding, "a creditor may issue a garnishment summons as provided in this chapter against any

---

[4]Shayleen Picht was a named plaintiff and Jon R. Hawks (individually) and George E. Warner were named defendants in the federal suit but were dismissed from the case by the parties' consent after the District Court granted partial summary judgment.

[5]Minn. Stat. § 571.71. Section 571.71 authorizes garnishment in three instances only: First, when a default judgment could have, but has not, been entered under Minn. R. Civ. P. 55.01(a) (the instance at issue in this case); second, after the entry of a money judgment in a civil action; or third, when the requirements of section 571.93 are met. Section 571.93, titled "Garnishment Before Judgment or Default," provides that garnishment may be pursued prior to entry of judgment but only by court order in circumstances enumerated in the statute—which include several scenarios where there is a danger that the debtor will dissipate assets to avoid paying the creditor. Id. § 571.93. This statutory scheme thus requires that, to obtain a prejudgment garnishment, the creditor's claim must meet the requirements of either Rule 55.01(a) or section 571.93. If the creditor is unable to meet the requirements of either the Rule or the statute, garnishment may proceed only after the court enters judgment in the suit.

third party . . . when a judgment by default <u>could have, but has not, been entered</u> pursuant to Rule 55.01(a) of the Minnesota Rules of Civil Procedure for the District Courts." <u>Id.</u> § 571.71(2) (emphasis added). Thus, by its own terms, this procedure may be employed without prior entry, by a judge or otherwise, of a judgment against the debtor.

Thus, whether a garnishment action may commence prior to entry of judgment depends upon whether the plaintiff would be entitled to receive a default judgment under Minnesota Rule of Civil Procedure 55.01(a). Rule 55.01 provides, in pertinent part:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend within the time allowed therefor by these rules or by statute . . . judgment by default shall be entered against that party as follows:
>
> > (a) When the plaintiff's claim against a defendant is upon a <u>contract for the payment of money only</u>, . . . the court administrator, upon request of the plaintiff and upon affidavit of the amount due, . . . shall enter judgment for the amount due and costs against the defendant.

Minn. R. Civ. P. 55.01(a) (emphasis added). Under Rule 55.01's provisions, a creditor can employ the garnishment procedures authorized by Minn. Stat. § 571.71(2) (garnishment without entry of a judgment) <u>only</u> when the plaintiff's claim "is upon a contract for the payment of money only." <u>Id.</u> We must decide, therefore, whether CheckRite could have obtained a default judgment against the Pichts pursuant to Rule 55.01(a).

III.

Hawks argues that a default judgment could have been entered pursuant to Rule 55.01(a) because the civil penalties authorized by the worthless check statute are ancillary and do not alter the contractual nature of the underlying claim on the dishonored checks. We do not dispute that the dishonored checks created contractual obligations. We assume for purposes of this appeal that civil penalties in general would fall within "claim[s] . . . upon a contract for the payment of money only." Minn. R. Civ. P. 55.01(a). Even under this assumption, however, we find that a default judgment could not have been entered in this case. The important factor is not whether the civil penalty alters the nature of the underlying suit, but rather whether the determination of the civil penalty requires an exercise of judicial discretion.

Minnesota's garnishment statute provides that garnishment proceedings against a debtor may commence when the creditor would be eligible to receive a default judgment under Rule 55.01(a). The Minnesota Supreme Court has provided some guidance as to the types of disputes that qualify for default judgment under that rule. In Sommers v. Thomas, the Minnesota Supreme Court found that Rule 55.01 stated, "[i]n the clearest possible terms[,] the clerk of municipal [or district] court is restricted to entering judgments by default to cases involving contracts for the payment of money and to those cases only." 88 N.W.2d 191, 193 (Minn. 1958). The court interpreted "contracts for the payment of money" to mean "cases where a definite contractual sum is involved and no discretionary determination of the amount due need be made." Id. at 194 (emphasis added). The court held that an action for conversion did not fall within the meaning of Rule 55.01, as the value of the property converted could not be considered a sum certain and therefore required a judicial determination. Sommers thus defines the nature of the amount in controversy required to receive an administrative default judgment under Rule 55.01(a). See also MacKenzie v. Belisle, 338 N.W.2d 33,

-6-

37 (Minn. 1983) (holding that grant of default judgment in contract action was improper under Rule 55.01(a) because "there was an insufficient basis to permit determination of the exact amount owed under the lease"). Hawks's attempts to distinguish Sommers as a case brought in tort, not in contract, must therefore fail.

Because the Minnesota Supreme Court has determined that Rule 55.01(a) default judgments are available only where no judicial discretion is required to determine the amount in controversy, we must address whether the award of the civil penalty provided for by the worthless check statute, Minn. Stat. § 332.50(2)(b)(1), requires the exercise of judicial discretion. We recently interpreted section 332.50 in Duffy v. Landberg, 215 F.3d 871 (8th Cir. 2000). The dispute in Duffy originated from letters sent to debtors by a collector attempting to collect on dishonored checks. In the disputed letters, the debt collector claimed that the amount due included the full $100 per check civil penalty authorized by section 332.50(2)(b)(1). The district court approved the content of the letters, finding no FDCPA violation. We reversed, disagreeing with the district court's evaluation of the nature of the civil penalty:

> Minnesota law actually provides that the issuer of a dishonored check is liable for "the amount of the check plus a civil penalty of up to $100 or up to 100 percent of the value of the check, whichever is greater." Although the distinction between saying a debtor is liable under Minnesota law for $100 and the actual provision that the debtor is liable for up to a $100 civil penalty is a subtle one, we find there is, in fact, a difference. It is not certain that a Minnesota court would impose the entire $100 penalty in any given situation. In fact, it is probably unlikely in the case of a $10 bad check.

Duffy, 215 F.3d at 874 (citation omitted). We held that the defendants violated the FDCPA by misrepresenting the amount of the penalty they were entitled to collect, and we remanded for entry of partial summary judgment in favor of the debtors. Id. at 875. Duffy thus confirms that the penalty authorized by section 332.50 does not automatically entitle Hawks to recovery of the full $100 per dishonored check, and that

the statute requires a judicial determination of the appropriate penalty amount. <u>See also</u> <u>Check Control, Inc. v. Anderson (In re Anderson)</u>, 181 B.R. 943, 953-54 (Bankr. D. Minn. 1995) ("It is . . . clear . . . that the court can vary the amount of the penalty:  the phrasing that sets the amount as 'up to' a sum certain . . . plainly operates to set a <u>cap</u> on the amount of the penalty . . . .  It does not create an <u>entitlement</u> to the greater amount.").

Hawks makes two additional arguments that are without merit.  Hawks argues that because the statutes at issue do not mention discretion in setting penalties, no discretion is applicable.  Hawks cites only the language of Rule 55.01 and section 332.50 as support for this assertion, contending that these provisions require only that the penalty be provided for by statute, that the plaintiff claim it, and that it be supported by affidavit.  Based upon the foregoing discussion of these provisions, Hawks's contention must fail.  Likewise, Hawks's assertion that Minnesota's public policy favors prejudgment garnishment cannot sustain Hawks's actions; the plain meaning of the statutory language shows that Hawks violated Minnesota law.

We find that section 332.50 requires the exercise of judicial discretion in establishing the civil penalty for a dishonored check.  Therefore, Hawks's attempt to use the garnishment procedure prior to entry of judgment was not authorized under Minnesota law because a default judgment could not properly be entered under Rule 55.01(a).  Hawks's actions in violation of Minnesota law thus violated the FDCPA's prohibition against threatening "to take any action that cannot legally be taken."  15 U.S.C. § 1692e(5).

IV.

Hawks argues that even if it violated Minnesota law and the FDCPA by resorting to prejudgment garnishment to obtain civil penalties pursuant to the  worthless check statute, we should excuse its error under the FDCPA's bona fide error defense.  We

disagree. Hawks has waived this defense, and in any event it would not be available to Hawks on these facts.

The bona fide error defense exists as an exception to the strict liability imposed upon debt collectors by the FDCPA. Section 1692k(c) of the Act provides that "[a] debt collector may not be held liable in [an FDCPA action] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

In its answer to the Pichts' complaint, Hawks pleaded bona fide error under 15 U.S.C. § 1692k(c) as an affirmative defense. Hawks did not, however, press this defense in its response to the Pichts' motion for partial summary judgment or in its memorandum in support of its own motion for summary judgment. Furthermore, Hawks later stipulated to liability for $1000 in statutory damages under the FDCPA and for reasonable attorney fees and costs incurred by the plaintiffs in bringing the FDCPA action. Nowhere in the stipulation did Hawks assert the possible application of the bona fide error defense. Thus, we find that Hawks has waived this affirmative defense. See Commercial Union Ins. Co. v. McKinnon, 10 F.3d 1352, 1354 (8th Cir. 1993) (stating that failure to pursue defense or to mention defense in summary judgment motion waives defense and it "cannot be resurrected on appeal"); Yeldell v. Tutt, 913 F.2d 533, 538-39 (8th Cir. 1990) (concluding that asserting lack of personal jurisdiction in answer but failing to reassert issue until appeal results in waiver of defense).

Even if Hawks had not waived the bona fide error defense, we conclude that the defense is not available to Hawks in this case. Hawks argues that the defense protects its actions because any liability resulted from a mistake in legal judgment in interpreting and applying Minnesota's garnishment statute. We have previously addressed the use of the bona fide error defense in cases of mistake in legal judgment and concluded that "reliance on the advice of counsel or a mistake about the law is not protected by" the

bona fide error defense. <u>Hulshizer v. Global Credit Servs., Inc.</u>, 728 F.2d 1037, 1038 (8th Cir. 1984) (per curiam) (citing <u>Baker v. G.C. Servs. Corp.</u>, 677 F.2d 775, 779) (9th Cir. 1982). <u>Hulshizer</u> remains the law of this Circuit. <u>See</u> <u>United States v. Reynolds</u>, 116 F.3d 328, 329 (8th Cir. 1997) (reiterating that one panel of judges in Circuit may not overrule decision of another panel in Circuit). Thus, Hawks's violation of the FDCPA cannot be excused under 15 U.S.C. § 1692k(c).

V.

Based upon the foregoing discussion, we affirm the District Court's grant of partial summary judgment to the Pichts and the denial of Hawks's summary judgment motion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.