Eric L. **SONMORE** and Jennifer M. **Rodine, individually, and on behalf of all others similarly situated, Plaintiffs,**

v.

**CHECKRITE RECOVERY SERVICES, INC., a Georgia corporation, d/b/a CheckRite, Jon R. Hawks, Ltd., and Jon R. Hawks, an individual, Defendants.**

No. 99CV2039.

United States District Court,
D. Minnesota.

Aug. 6, 2001.

Beeler, Schad & Diamond, P.C. by Michael S. Hilicki, Chicago, IL, Michael G. Phillips, St. Louis Park, MN, for Plaintiffs.

Bassford, Lockhart, Truesdell & Briggs, P.A. by Michael Klutho, Minneapolis, MN, for Defendants.

## ORDER

ALSOP, Senior District Judge.

This matter comes before the Court on Defendant Jon R. Hawks, Ltd.'s ("Hawks, Ltd.") and Defendant Jon R. Hawks' ("Jon Hawks"), sometimes collectively referred to as "Defendants Hawks," and Plaintiffs Eric L. Sonmore's ("Sonmore") and Jennifer M. Rodine's ("Rodine") cross motions for summary judgment on all of Plaintiffs' claims.[1] For the reasons explained below, the Court will deny Defendants Hawks' motion for summary judgment and grant Plaintiffs' motion for summary judgment.

## I. BACKGROUND

Hawks, Ltd. is a Minnesota corporation and Jon Hawks, an attorney, is its sole officer and shareholder. Defendant CheckRite Recovery Services, Inc. ("CheckRite") is a Georgia corporation. Hawks, Ltd. acts as a debt collector for CheckRite. Defendants Hawks and CheckRite regularly send debt collection form letters to debtors and are debt collectors under 15 U.S.C. § 1692a(6). Plaintiffs are citizens of Minnesota and have brought this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), on behalf themselves and all others similarly situated. Plaintiffs allege that CheckRite's and Defendants Hawks', sometimes collectively referred to as "Defendants," respective debt collection letters violate the FDCPA. Plaintiffs and Check-Rite have entered into a settlement agreement, which has yet to be presented to the Court for approval and implementation.

This suit stems specifically from separate collection letters Defendants sent to each Plaintiff to collect on Plaintiffs' dishonored checks that were written for their personal use: a two dollar check written by Sonmore to purchase gasoline and a $30 check written by Rodine to purchase food at a restaurant. The checks were dishonored when Plaintiffs had insufficient funds to cover the amounts of the checks in their respective checking accounts. When that occurred, CheckRite sent Plaintiffs collection letters, which Plaintiffs allege misrepresent the amounts of Plaintiffs' debts and are otherwise deceptive and misleading in violation of the FDCPA.[2]

When Plaintiffs failed to pay the amounts CheckRite alleged they owed, CheckRite referred collection of Plaintiffs' dishonored checks to Defendants Hawks. Defendants Hawks sent each Plaintiff a substantially identical letter. The letters are printed on Hawks, Ltd. letterhead; at the top of the letter they state "Attorneys at Law;" they also state that they are from a law firm and that the law firm acts as a debt collector for CheckRite. At the bottom of the letters, are a facsimile of Jon Hawks' signature. The letters are marked "OFFER OF SETTLEMENT" and vary only in the amount and other particulars associated with each Plaintiffs' dishonored check. Although Jon Hawks approved the content of the computer generated form letter, retained the right to alter the its content, and generally scanned a random batch of letters for typographical and computational errors, he did not personally know either Plaintiff or personally review their files prior to sending the letters.

Sonmore's letter states in pertinent part:[3]

---

1. Defendants Hawks also moved to deny class certification. Because, however, Plaintiffs filed a motion for class certification, the Court will address this issue in a separate Order.

2. Plaintiffs' claims regarding these letters are not the subject of the instant motion, however, Sonmore's second letter from CheckRite

was the subject of a previous Order, dated October 25, 2000.

3. Because Sonmore's and Rodine's letters are materially identical, the Court quotes only Sonmore's letter by way of example. Copies of both Plaintiffs' letters are attached to this Order.

Our firm represents CHECKRITE who, on behalf of the Merchant named below, has referred your dishonored check to us for settlement because you did not pay the amount owed after CHECKRITE sent you a statutory Notice of Dishonor*. Please be advised that we have *NOT* independently verified this claim, but rather have relied on the information provided to us by CHECKRITE; and, although the Merchant did not agree to defer payment or grant you credit, this may be an attempt to collect a debt.

### (See NOTICE on reverse side)

We have now been authorized to offer you the following opportunity to settle this matter *before* CHECKRITE decides whether or not to seek recovery of the Total Possible Liability set forth below:

**SETTLEMENT OFFER:**

Check No.: 1102
Check Date: 11–05–98
Merchant: Twin City Store # 520
Check Amount: $ 2.00
Service Charge: $ 20.00
Civil Penalty: $100.00

TOTAL SETTLEMENT OFFER: $122.00

**POSSIBLE LIABILITY UNDER STATE LAW *IF* A JUDGMENT IS ENTERED:**

| | |
|---|---|
| Check Amount: | $ 2.00 |
| Cost of Collection: | $ 30.00 |
| Civil Penalty (Maximum Allowed) | $100.00 |
| Civil Theft Damages: | $ 50.00 |
| Court Costs: | $150.00 |
| (filing fee and estimated service of process) | |

TOTAL POSSIBLE LIABILITY: $332.00

This is *NOT* a demand for payment and you are *NOT* required to pay the Total Settlement Offer. This is an Offer of Settlement. You may accept or reject this offer. Although Minn.Stat. § 332.50 subd. 2(b) permits a payee or holder to make a written demand for payment of the check amount, plus the maximum civil penalty ($100.00 or the check amount, whichever is greater), you are *NOT* required to pay the Settlement Amount and may reject this offer.

Plaintiffs contend that the letters violate the FDCPA because in sending the mass-generated form letters, Defendants Hawks were not actually acting as attorneys in violation of 15 U.S.C. §§ 1692e(3) and (9) (1993 & Supp.2000), and because the letters do not state the amounts Plaintiffs owe CheckRite, thus violating § 1692g(a)(1).[4]

4. Sonmore previously claimed that Defendants Hawks' letter to him was otherwise deceptive and misleading because it implied that wage garnishment or sheriff's levy were inevitable if a judgment is entered against him. In an Order dated October 25, 2000, the Court granted Defendants Hawks' motion for summary judgment on this claim. Plaintiffs also assert that CheckRite is vicariously liable for Defendants Hawks' violations of the FDCPA.

## II. DISCUSSION

### A. Standard for Review

The Court's jurisdiction is authorized by 15 U.S.C. § 1692k(d) (1993) and 28 U.S.C. § 1331 (1986). 15 U.S.C. § 1692k(d) states, "[a]n action to enforce any liability created by this title ... may be brought in any appropriate United States district court without regard to the amount in controversy." 15 U.S.C. § 1692k(d).

The parties have filed cross motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. During oral argument, counsel for both Plaintiffs and Defendants Hawks advised the Court that there remain no germane issues of fact and that the issues presented by both claims are purely matters of law that are ripe for summary resolution.

**B. The Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.***

Plaintiffs and Defendants Hawks have moved for summary judgment on Counts IV and V of the Plaintiffs' Complaint. Count IV alleges that Defendants Hawks violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e(3) and (9) and Count V alleges that Defendants Hawks violated § 1692g(a)(1). A single violation of the FDCPA is sufficient to establish civil liability under the Act. *See* 15 U.S.C. § 1692k; *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2nd Cir.1993). Thus, Plaintiffs may recover if the Court finds for Plaintiffs on either Count. Nonetheless, the Court finds Defendants Hawks violated both § 1692e and § 1692(g)(1). Accordingly, the Court will deny Defendants Hawks' motion for summary judgement on these counts and grant Plaintiffs' motion for summary judgment.

**i. The Unsophisticated Consumer Standard**

Congress enacted the FDCPA, 15 U.S.C. §§ 1692 *et seq.,* as an amendment to the Consumer Credit Protection Act in order "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692 (1993). The Act "makes it unlawful for debt collectors to use 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Freyermuth v. Credit Bureau Servs., Inc.,* 248 F.3d 767, 770 (8th Cir.2001) (citing 15 U.S.C. § 1692e). "The FDCPA is a remedial strict liability statute which was intended to be applied in a liberal manner." *Picht v. Hawks,* 77 F.Supp.2d 1041, 1043 (D.Minn.1999), *aff'd,* 236 F.3d 446 (8th Cir.2001). "Proof of deception or actual damages is not necessary to make a recovery under the FDCPA." *Id.*

 It is now well established in this Circuit that when evaluating debt collection letters, the Court must do so from the vantage point of the "unsophisticated consumer." *Freyermuth,* 248 F.3d at 771; *Duffy v. Landberg,* 215 F.3d 871 (8th Cir. 2000). The debt collector's actions are the focus of this inquiry "and whether an unsophisticated consumer would be harassed, misled or deceived by them." *Freyermuth,* 248 F.3d at 771. The standard "effectively serves [a] dual purpose: it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretation of collection notices." *Morse v. Dun & Bradstreet, Inc.,* 87 F.Supp.2d 901, 903 (D.Minn. 2000) (quoting *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2nd Cir.1993)). The unsophisticated consumer standard is subject to a requirement of reasonableness. *See Duffy,* 215 F.3d at 874–74; *Morse,* 87 F.Supp.2d at 903–04. "The [Fair Debt Collection Practices] Act protects the unsophisticated debtor, but not the irrational one." *White v. Goodman,* 200 F.3d 1016, 1020 (7th Cir.2000). Thus, the unsophisticated consumer standard is "designed to protect consumers of below average sophistication or intelligence without having the standard tied to 'the very last rung on the sophistication ladder.'" *Duffy,* 215 F.3d at 874 (citations omitted). Therefore, it is with the unsophisticated consumer in mind that the Court reviews Defendants Hawks' debt collection practices and the parties' respective summary judgment motions.

**a. Count IV: 15 U.S.C. § 1692e(3) and (9)**

In the Court's Order dated October 25, 2000, the Court denied Defendants Hawks'

previous motion for summary judgment on the question of whether they violated 15 U.S.C. §§ 1692e(3) and (9) when they sent a debt collection letter to Sonmore, because material facts remained in dispute at that time regarding the extent to which Defendants Hawks were acting as attorneys in a meaningful way when the letter was sent—whether or not Jon Hawks directly controlled or supervised the process through which the letter was sent or was otherwise professionally involved in any meaningful way as an attorney in relation to Sonmore's debt. Since that time, Rodine joined as a party to the suit. Rodine received a letter identical to Sonmore's letter in every relevant way. Plaintiffs and Defendants Hawks are in accord that there are no longer material facts in dispute regarding this issue and that the issue is, therefore, ripe for summary adjudication. The Court agrees. *See generally* Fed.R.Civ.P. 56(c).

The subsections of the FDCPA implicated in Count IV of the Complaint forbid debt collectors from "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney," § 1692e(3), and "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval," § 1692e(9). Plaintiffs allege that Defendants Hawks falsely represented that Defendants Hawks' letters were from an attorney and created false impressions as to the letters' source, authorization, or approval because the letters were not from an attorney in any meaningful sense.

It is clear that the letters purport to be from an attorney, Jon Hawks, who sent them as a representative of his law firm, Hawks, Ltd. The question again before

this Court is whether the representation that the letter is from an attorney is false. Because there is no controlling authority in this Circuit on this question, the Court looks for guidance from our sister Circuits in answering the question.

The FDCPA was designed to protect the unsophisticated consumer. "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Avila v. Rubin,* 84 F.3d 222, 228 (7th Cir.1996). There is no dispute that Jon Hawks is an attorney. The dispute surrounds whether or not he was acting as such when he sent the debt collection letters.

■ The FDCPA prohibits a debt collector from sending a letter that falsely implies to the unsophisticated consumer that an attorney is pursuing them in an effort to collect a debt. *See, e.g., Avila,* 84 F.3d at 227–30. The Second Circuit in *Clomon v. Jackson,* 988 F.2d 1314, 1320–21 (2nd Cir.1993), established that an attorney sending a dunning letter must be directly and personally involved in the mailing of the letter in order to comply with the FDCPA. Explicating the standard, the court in *Clomon* stated:

As we have found here, the use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent. We have also found here that the use of an attorney's signature implies—at least in the absence of language to the contrary—that the attorney signing the let-

ter formed an opinion about how to manage the case of the debtor to whom the letter was sent. In a mass mailing, these implications are frequently false: the attorney whose signature is used might play no role either in sending the letters or in determining who should receive them. For this reason, there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by § 1692e.

*Id.* at 1321.

Similarly, the Seventh Circuit in *Avila* explained,

A letter from an attorney implies that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process through which the letter was sent.... A debt collection letter on an attorney's letterhead conveys authority.... It is reasonable to believe that a dunning letter from an attorney threatening legal action will be more effective in collecting a debt than a letter from a collection agency. The attorney letter implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action. And the letter also implies that the attorney has some personal involvement in the decision to send the letter. Thus, if a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file. Any other result would sanction the wholesale licensing of an attorney's name for commercial pur-

poses, in derogation of professional standards . . . .

*Avila,* 84 F.3d at 229.

██ Whether or not attorney involvement is meaningful so as to comport with the FDCPA is a question of fact. While no one factor is dispositive of the question, the inquiry involves facts uncovering, for example, whether an attorney reviewed the debtor's files before the dunning letter was sent; whether the attorney was aware of the identities of the letter's recipients or the factual circumstances surrounding the alleged debt; whether the attorney participated in and exercised professional judgment regarding the decision that a letter should be sent, when it should be sent, and to whom; whether the attorney drafted or otherwise supervised the drafting of, reviewed, and approved the letter before it was sent; and the relationship between the attorney and the debt collector. *See generally Avila,* 84 F.3d 222; *Clomon,* 988 F.2d 1314; *Boyd v. Wexler,* No. 00 Civ. 2555, 2000 WL 1727781, *2–4 (N.D.Ill. 2000).

██ Although Jon Hawks attests that he is the only person in his firm authorized to vary the content of the letters, make a decision regarding to whom the letters are sent, and that he usually reviews a small percentage of the letters for typographical or computational errors, these acts are insufficient to serve as a basis for finding that he was professionally involved in any meaningful way as an attorney in relation to Plaintiffs' debts. It is not sufficient under the FDCPA to merely review the general form of a debt collection letter and to define general parameters as to the intended recipients. To comply with the act, an attorney must have exercised some threshold level of considered and independent professional judgment. *Compare Lang v. Winston & Winston, P.C.,* No. 00 Civ. 5516, 2001 WL 641122, *6–8 (N.D.Ill.

June 4, 2001) (defendant's motion to dismiss on attorney question denied), *and Nielsen v. Dickerson,* No. 98 Civ. 5909, 1999 WL 754566, *3–5 (N.D.Ill.1999) (plaintiff's motion for summary judgment on attorney question granted), *with Boyd v. Wexler,* 2000 WL 1727781 (N.D.Ill.2000) (defendant's motion for summary judgment on attorney question granted); *Goldberg v. Winston & Morrone, P.C.,* No. 95 Civ. 9282, 1997 WL 139526 (S.D.N.Y. 1997) (plaintiff's motion for partial summary judgment on attorney involvement denied), *and Anthes v. Transworld Sys., Inc.,* 765 F.Supp. 162, 166 (D.Del.1991) (defendant's motion for summary judgment on attorney involvement granted).

The parties do not dispute that Jon Hawks did not personally know Plaintiffs, review their letters, or review their files before sending them debt collection letters. The letters were computer generated form letters bearing a facsimile-stamp of Jon Hawks' signature.

As a matter of practice, Defendants Hawks' debt collection activities are initiated by CheckRite. CheckRite electronically sends limited information to Defendants Hawks. Employees of Hawks Ltd. then, as a matter of course, print out standard form debt collection letters, without Jon Hawks receiving or reviewing a single file or document relating to the debt, considering the particular facts relating to any of the intended recipients, or actually exercising any independent professional judgment regarding whether to send a letter or regarding the "offer to settle" a particular debt. Sometimes several thousand letters are printed at once. The letters are printed even if Jon Hawks is unavailable. If,

for example, Jon Hawks is on vacation the letters are sent without his conducting even the cursory typographical review of a small percentage of the letters. Thus, approximately 90–100% of the letters are sent without an attorney reviewing a single file or the debt collection letter. After a letter is sent, the electronic information regarding the contact is maintained in CheckRite's database.

The parties agree that Plaintiffs' letters were generated consistent with the above described process. Although no one of the above mentioned facts is dispositive, after reviewing all the admissible evidence and facts that are not in dispute, the Court finds, as a matter of law, Defendants Hawks' actions as a whole to be insufficient to constitute acting as an attorney in a meaningful way in relation to Plaintiffs' debts. Thus, Defendants Hawks' letters violate the FDCPA. Therefore, Plaintiffs' summary judgment motion on Count IV of the Complaint will be granted. *See generally* Fed.R.Civ.P. 56(c); *Nielsen,* 1999 WL 754566, *3–5.

**b. Count V: 15 U.S.C. § 1692(g)(a)(1)**

■ In Count V, Plaintiffs allege that Defendants Hawks violated 15 U.S.C. § 1692(g)(a)(1), which requires a debt collector to send a written notice containing "the amount of the debt" within five days of the debt collector's initial communication with the debtor. Each party moved for summary judgment on this issue alleging that material facts are not in dispute as to the merits of this claim. The Court agrees and is persuaded that, as a matter of law, Defendants Hawks failed to meet the requirements of the FDCPA because they did not send Plaintiffs the requisite written communication stating the amount of Plaintiffs' respective debts.[5]

---

**5.** Although the Seventh Circuit has begun to grapple with this provision of the statute, *see Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.,* 214 F.3d 872 (7th Cir.2000); *Bawa v. Bowman, Heintz, Boscia & Vician,* 2001 WL 618966 (S.D.Ind. May 30,

2001); *Person v. Stupar, Schuster & Cooper, S.C.,* 136 F.Supp.2d 957 (E.D.Wis.2001); *Wilkerson v. Bowman,* 200 F.R.D. 605 (N.D.Ill.2001), the Court finds a dearth of case law on this question in this Circuit.

Defendants Hawks had a singular communication with each Plaintiff, thus, any notice containing the amounts of their debts would have to have been encompassed in those communications. The Court finds Defendants Hawks' letters insufficient under the unsophisticated consumer standard to meet the requirements of the FDCPA. Therefore, the Court will deny Defendants Hawks' summary judgment motion on Count V of the Complaint and grant Plaintiffs' motion on that Count.

Defendants Hawks' letters are marked "OFFER OF SETTLEMENT." They contain two columns. One column is labeled "SETTLEMENT OFFER" and contains an offer to settle Plaintiffs debts for amounts equaling the check amounts, a $20 service charge, and an $100 civil penalty. The other column is labeled "TOTAL LIABILITY UNDER STATE LAW *IF* A JUDGMENT IS ENTERED" and lists the above mentioned items plus $30 for the cost of collection, $50 in civil theft damages, and $150 for estimated court costs. Thus, the amount listed in this column is $210 dollars more than the amount listed in the column indicating the settlement offer. The letters continue by indicating that Plaintiffs are not required to pay the settlement offers. While the letters contain those two columns of costs potentially associated with the debt, the letters nowhere indicate what Plaintiffs actually owe to CheckRite.

Defendants Hawks argue that the amount of debt actually owed is obvious in the letter because the Plaintiffs were told the amounts of their dishonored checks and were informed of the $20 service charge. Additionally, Plaintiffs were informed of the possibility of a Civil Penalty, which is listed in each column and described briefly in the text of the letter. The Court notes, however, that although the text of the letter states that Minn.Stat. 332.50 permits a debt collector to demand

the maximum civil penalty, it provides no explanation of the service charge and does not indicate that Plaintiffs actually owe that amount. Plaintiffs allege that an unsophisticated consumer reading Defendants Hawks' letters will not understand how much the consumer actually owes on his or her debt. The Court agrees.

As previously noted, the unsophisticated consumer standard is "designed to protect consumers of below average sophistication or intelligence without having the standard tied to 'the very last rung on the sophistication ladder.' " *Duffy*, 215 F.3d at 874 (citations omitted). The standard is subject to a requirement of reasonableness: under the unsophisticated consumer standard, debt collectors are protected from bizarre, idiosyncratic, and irrational interpretations of debt collection letters. *See generally id.; White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir.2000); *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir.1993); *Morse v. Dun & Bradstreet, Inc.*, 87 F.Supp.2d 901, 903–04 (D.Minn.2000). The Court finds that Defendants Hawks' letters would confuse the unsophisticated consumer. When presented with the two columns of figures, the unsophisticated consumer would be uncertain of the amount of debt he or she actually owed and would be "scratching his [or her] head upon receipt of such a letter." *Avila*, 84 F.3d at 226.

The FDCPA requires a debt collector to give a debtor a written notice of the amount the debtor owes. This requirement is meant to avoid confusing, fraudulent, and coercive debt collection practices. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir.2000). In order for it to be meaningful, the information must be conveyed in such a manner as to secure the understanding of the consumer, even the unsophisticated consumer. Thus, to

meet the requirements of the statute, a debt collector must be explicit regarding the amount owed. A statement advising a consumer of the amount he or she owes,

> to be valid, must be effective, and it cannot be cleverly couched in such a way as to eviscerate its message. To protect the uniformed, the naive, and the trusting—the sort of people who easily fit under the umbrella of the "unsophisticated consumer"—the notice cannot be ... misleading and tricky ....

*Id.* (describing a debt validation notice); *accord Ost v. Collection Bureau, Inc.,* 493 F.Supp. 701, 702–03 (D.N.D.1980). Having informed the debtor of his or her debt, the debt collector remains at liberty to offer to settle debts and to inform debtors of additional potential liabilities that may be incurred consistent with the law.

Defendants Hawks' letters fail to meet the requirements of the FDCPA. Thus, the Court will grant Plaintiffs' motion for summary judgment on Count V of the Complaint. Material facts are not in dispute regarding Count V and, as a matter of law, Defendants Hawks' letters fail to state the amounts of debt Plaintiffs owed. *See generally* Fed.R.Civ.P. 56(c); 15 U.S.C. § 1692(g)(a)(1).

### ii. Subject Matter Jurisdiction

Finally, Defendants Hawks argue that the Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs knew their checking accounts had negative balances when they wrote their dishonored checks. In doing so, Defendants Hawks argue, Plaintiffs violated Minn.Stat. § 609.535. Thus, the debt arose from Plaintiffs' criminal conduct, which is not encompassed under the FDCPA's protective umbrella.

**6.** The Court has also considered Defendants Hawks' arguments in support of their alleged defenses and finding them to be without merit, rejects them without further comment. As

A Court lacking subject matter jurisdiction "shall dismiss the action." Fed. R.Civ.P. 12(h)(3). Issues of subject matter jurisdiction may be raised at any time. *See Fromm v. Comm'n of Veterans Affairs,* 220 F.3d 887, 890 (8th Cir.2000). The Court has considered Defendants Hawks' arguments on this issue and finds them to be without merit.[6] It is well established in this Circuit that collection on a dishonored check constitutes debt collection for purposes of the FDCPA. *See Duffy v. Landberg,* 133 F.3d 1120, 1124 (8th Cir.1998); *see also* 15 U.S.C. § 1692a(5) (defining a debt under the Act). The Court is unpersuaded that Plaintiffs' activities fall outside the purview of the statute. "[C]ourts generally will not create a fraud exception where none exists in the text of the statute." *Id.* (citation omitted); *see also Keele v. Wexler,* 149 F.3d 589, 595–96 (7th Cir.1998); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322 (7th Cir.1997). Thus, the Court has subject matter jurisdiction to decide Plaintiffs' claims and will deny Defendants Hawks' motion for summary judgment on the ground that the Court lacks subject matter jurisdiction.

\* \* \* \* \* \*

Upon its review of the files, motions and proceedings herein, it is hereby ORDERED that:

1. Defendants Hawks' motion for summary judgment on Count IV is DENIED.

2. Plaintiffs' motion for summary judgment on Count IV is GRANTED.

3. Defendants Hawks' motion for summary judgment on Count V is DENIED.

4. Plaintiffs' motion for summary judgment on Count V is GRANTED.

noted before, Defendants Hawks' defenses to class certification will be addressed in a separate Order.

**1138**

## OFFER OF SETTLEMENT

Jon R. Hawks

Admitted in Minnesota and Ohio

Attorneys at Law

Suite 535

7301 Ohms Lane

Minneapolis, MN 55439–2340

JANUARY 6, 1999

Reference No:

ERIC SONMORE

Our firm represents CHECKRITE who, on behalf of the Merchant named below, has referred your dishonored check to us for settlement because you did not pay the amount owed after CHECKRITE sent you a statutory Notice of Dishonor *. Please be advised that we have *NOT* independently verified this claim, but rather have relied on the information provided to us by CHECKRITE; and, although the Merchant did not agree to defer payment or grant you credit, this may be an attempt to collect a debt.

(See NOTICE on reverse side)

We have now been authorized to offer you the following opportunity to settle this matter *before* CHECKRITE decides whether or not to seek recovery of the Total Possible Liability set forth below:

SETTLEMENT OFFER:

| Check Number: | | 1102 |
|---|---|---|
| Check Date: | | 11–05–98 |
| Merchant: | TWIN CITIES STORE # 520 | |
| Check Amount: | | $ 2.00 |
| Service Charge: | | $ 20.00 |
| Civil Penalty: | | $100.00 |
| **TOTAL SETTLEMENT OFFER:** | | **$122.00** |

POSSIBLE LIABILITY UNDER STATE LAW *IF* A JUDGMENT IS ENTERED:

| Check Amount: | $ 2.00 |
|---|---|
| Cost Of Collection: | $ 30.00 |
| Civil Penalty (Maximum allowed): | $100.00 |
| Civil Theft Damages: | $ 50.00 |
| Court Costs: | $150.00 |
| (Filing Fee and estimated Service of Process) | |
| **TOTAL POSSIBLE LIABILITY:** | **$332.00** |

This is *NOT* a demand for payment and you are *NOT* required to pay the Total Settlement Offer. This is an Offer of Settlement. You may accept or reject this offer. Although Minn.Stat. Sec 332.50 Subd. 2(b) permits a payee or holder to make written demand for payment of the check amount, plus the maximum civil penalty ($100.00 or the check amount, whichever is greater), you are *NOT* required to pay the Settlement Amount and may reject this offer. However, be advised that our client specifically reserves the right to revoke this offer at any time after the expiration of 30 days from the date of this letter. Payment by money order, cashier's check, or authorized bank debit is required. Your remittance of the Total Settlement Offer will be accepted as full satisfaction of this claim. The merchant's cause of action for additional damages, if any, will be waived, and we will notify CHECK-RITE to remove your bank account data

* This law firm acts as a debt collector for CheckRite and it's member merchant. Should litigation be deemed necessary by our client or its member merchant, an attorney in this firm will review your file prior to initiation of a law suit in your state. However, at this time. Mr. Hawks HAS NOT YET formed an opinion or advised CheckRite about how to manage your specific case. MN29408JH2

from their nation-wide verification network.

If you are having financial difficulty, call us Toll Free at 1–800–285–7618 and we will try to work out a time frame for repayment so as to avoid the possible liability for court filing fees, service of process, wage garnishment and/or sheriff's levy following entry of a judgment. We urge you to take advantage of this opportunity to avoid additional liability which could result under Minnesota law by either paying the Total Settlement Offer, or by making arrangements with us for payment. If you have questions about this Offer, you *should* consult your *own* attorney right away.

PLEASE CALL US TODAY OR YOU MAY...

MAKE PAYMENT DIRECTLY TO:

Jon R. Hawks, Ltd.,

P.O. Box 39814

Minneapolis, MN 55439–08

1–800–285–7618

1–612–830–0951

Very truly yours,

Jon R. Hawks

### NOTICE

Although the merchant *did not* agree to defer payment or extend credit, this may be deemed an attempt to collect a debt and/or claim. Any information obtained will be used for that purpose.

Unless you notify our law firm within thirty (30) days after receiving this notice that you dispute the validity of this debt and/or claim or any portion thereof, our law firm will assume this debt and/or claim

** This law firm acts as a debt collector for CheckRite and its member merchant. Should litigation be deemed necessary by our client or its member merchant, an attorney in this firm will review your file prior to initiation of

is valid. If you make a request to our law firm *in writing* within thirty (30) days from receiving this notice, our law firm will obtain verification of the debt and/or claim or obtain a copy of a judgment against you and mail you a copy of such judgment or verification. If you make a request to our law firm *in writing* within thirty (30) days of receiving this notice, our law firm will provide you with the name and address of the original creditor and/or claimant, if different from the current creditor and/or claimant.

If you notify our law firm to cease contacting you by telephone at your place of employment, no further contact shall be made. If you refuse to pay the debt and/or claim or you wish our law firm to cease all further communication and you so advise our office *in writing,* we shall not communicate further with you except to advise you of: (A) we may invoke specified remedies provided by law, or (B) to advise you that our efforts are being terminated.

Jon R Hawks

Admitted in Minnesota

Attorneys at Law

Suite 535

7301 Ohms Lane

Minneapolis, MN, 55439–2340

AUGUST 4, 2000

Reference No:

JENNIFER M. RODINE

### OFFER OF SETTLEMENT

Our firm represents CHECKRITE who, on behalf of the Merchant named below, has referred your dishonored check to us for settlement because you did not pay the amount owed after CHECKRITE sent you a statutory Notice of Dishonor **. Please be advised that we have *NOT* indepen-

a law suit in your state. However, at this time. Mr. Hawks HAS NOT YET formed an opinion or advised CheckRite about how to manage your specific case. MN29408JH2

dently verified this claim, but rather have relied on the information provided to us by CHECKRITE; and, although the Merchant did not agree to defer payment or grant you credit, this may be an attempt to collect a debt.

SETTLEMENT OFFER:.

| | |
|---|---|
| Check Number: | 2071 |
| Check Date: | 05–17–00 |
| Merchant: NEW GARDEN RESTAURANT | |
| Check Amount: | $ 30.00 |
| Service Charge: | $ 20.00 |
| Civil Penalty: | $100.00 |
| TOTAL SETTLEMENT OFFER: | $150.00 |

This is *NOT* a demand for payment and you are *NOT* required to pay the Total Settlement Offer. This is an Offer of Settlement. You may accept or reject this offer. Although Minn.Stat. Sec 332.50 Subd. 2(b) permits a payee or holder to make written demand for payment of the check amount, plus the maximum civil penalty ($100.00 or the check amount, whichever is greater), you are *NOT* required to pay the Settlement Amount and may reject this offer. However, be advised that our client specifically reserves the right to revoke this offer at any time after the expiration of 30 days from the date of this letter. Payment by money order, cashier's check, or authorized bank debit is required. Your remittance of the Total Settlement Offer will be accepted as full satisfaction of this claim. The merchant's cause of action for additional damages, if any, will be waived, and we will notify CHECKRITE to remove your bank account data from their nation-wide verification network.

If you are having financial difficulty, call us Toll Free at 1–800–285–7618 and we will try to work out a time frame for

(See NOTICE on reverse side)

We have now been authorized to offer you the following opportunity to settle this matter *before* CHECKRITE decides whether or not to seek recovery of the Total Possible Liability set forth below:

| POSSIBLE LIABILITY UNDER STATE LAW *IF* A JUDGMENT IS ENTERED: | |
|---|---|
| Check Amount: | $ 30.00 |
| Cost Of Collection: | $ 30.00 |
| Civil Penalty (Maximum allowed): | $100.00 |
| Civil Theft Damages: | $ 50.00 |
| Court Costs: | $150.00 |
| (Filing Fee and estimated Service of Process) | |
| TOTAL POSSIBLE LIABILITY: | $360.00 |

repayment so as to avoid the possible liability for court filing fees, service of process, wage garnishment and/or sheriff's levy following entry of a judgment. We urge you to take advantage of this opportunity to avoid additional liability which could result under Minnesota law by either paying the Total Settlement Offer, or by making arrangements with us for payment. If you have questions about this Offer, you *should* consult your *own* attorney right away.

PLEASE CALL US TODAY OR YOU MAY

MAKE PAYMENTS DIRECTLY TO:

Jon R. Hawks, Ltd.

P.O. Box 39814

Minneapolis, MN 55439–08

1–800–285–7618

1–612–830–0951

Very truly yours,

Jon R. Hawks

**NOTICE**

Although the merchant *did not* agree to defer payment or extend credit, this may

be deemed an attempt to collect a debt and/or claim. Any information obtained will be used for that purpose.

Unless you notify our law firm within thirty (30) days after receiving this notice that you dispute the validity of this debt and/or claim or any portion thereof, our law firm will assume this debt and/or claim is valid. If you make a request to our law firm *in writing* within thirty (30) days from receiving this notice, our law firm will obtain verification of the debt and/or claim or obtain a copy of a judgment against you and mail you a copy of such judgment or verification. If you make a request to our law firm *in writing* within thirty (30) days of receiving this notice, our law firm will provide you with the name and address of the original creditor and/or claimant, if different from the current

If you notify our law firm to cease contacting you by telephone at your place of employment, no further contact shall be made. If you refuse to pay the debt and/or claim or you wish our law firm to cease all further communication and you so advise our office *in writing,* we shall not communicate further with you except to advise you of: (A) we may invoke specified remedies provided by law, or (B) to advise you that our efforts are being terminated.