**Christ CLOMON, Plaintiff–Appellee,**

v.

**Philip D. JACKSON, Defendant–Appellant.**

**No. 761, Docket 92–7942.**

United States Court of Appeals, Second Circuit.

Argued Jan. 6, 1993.

Decided March 17, 1993.

Philip D. Jackson, Freeport, NY (Ciaravino, Jackson & Tedeschi), for defendant-appellant, pro se. Ira Mitzner, Washington, DC (Dickstein, Shapiro & Morin, of counsel).

Joanne S. Faulkner, New Haven, CT, for plaintiff-appellee.

Before KEARSE and WINTER, Circuit Judges, and CABRANES, District Judge.*

JOSÉ A. CABRANES, District Judge:

Philip D. Jackson appeals from a judgment of the United States District Court for the District of Connecticut (Peter C. Dorsey, Judge) granting summary judgment against him in an action for damages under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692o. The district court held that Jackson violated the FDCPA when he authorized the sending of debt collection letters bearing his name and a facsimile of his signature without first reviewing the collection let-

* The Honorable José A. Cabranes, Chief Judge of the United States District Court for the District of Connecticut, sitting by designation.

ters or the files of the persons to whom the letters were sent. We affirm.

## BACKGROUND

The appellant, Philip D. Jackson, is an attorney employed on a part-time basis as general counsel for a debt collection agency, NCB Collection Services ("NCB"). The agency collects debts on behalf of American Family Publishers ("AFP"), an organization engaged in the business of selling magazine subscriptions. This case arises out of an attempt by NCB to collect a debt of $9.42 allegedly owed to AFP by the appellee, Christ Clomon.

NCB issues debt collection letters on behalf of AFP to approximately one million debtors each year through a computerized mass-mailing system. Under this system, AFP provides NCB with computer tapes containing information about delinquent accounts. NCB then transfers this information from the tapes to its own computer system, which inserts each debtor's name, address, account number, and balance due into a form letter requesting payment of the debt. The computer system then causes each letter to be printed, folded, and inserted into a window envelope for mailing. If a debtor does not respond to the initial collection letter, the computer automatically produces and mails additional letters according to a predetermined schedule. The collection agency maintains a program for assessing the reliability of its computer data, but no employee of the agency reviews the file of any individual debtor until the debtor responds to the agency's demands for payment.

Clomon received a series of six form letters from NCB regarding her $9.42 debt to AFP. The first of these letters was sent on a form bearing the logo of NCB and the name of "Althea Thomas, Account Supervisor." The remaining five letters were sent on letterhead containing the following words in the top margin:

P.D. Jackson, G.C.   Offices of General Counsel
Attorney–at–Law     336 Atlantic Avenue
                  East Rockaway, N.Y. 11518

In addition, each of these letters bore the following signature line:

P.D. JACKSON, ATTORNEY AT LAW
GENERAL COUNSEL
NCB COLLECTION SERVICES

The information in the letterhead and at the signature line was accurate, at least in a literal sense. Jackson is indeed an attorney, admitted to practice in the State of New York. He is employed as general counsel of NCB Collection Services, albeit on a part-time basis, for which he receives an annual salary of approximately $24,000. The address of NCB Collection Services in New York State is 336 Atlantic Avenue, East Rockaway, New York 11518. The letters were not, however, actually signed by Jackson or by any other person: each letter bore a mechanically reproduced facsimile of the signature of "P.D. Jackson."

The letters "signed" by Jackson were delivered to Clomon over a period of more than two months, from March 1991 to early June of that year. The letters contained a variety of threatening statements in an apparent effort to induce Clomon to pay the amount she owed. The following statements are representative of the letters' contents:

> You have 30 days before we take any additional steps deemed appropriate regarding your outstanding balance....
>
> ....
>
> Based on information made available to us, we must recommend that your creditor proceed with such further action as the circumstances may indicate to dispose of this outstanding balance.
>
> ....
>
> After NCB reviews your collection file and previous correspondence sent you, I am suggesting we take the appropriate measures provided under the law to further implement the collection of your seriously past due account.
>
> ....
>
> Your account was referred to us with instructions to pursue this matter to the furthest extent we deem appropriate.
>
> ....
>
> Acting as General Counsel for NCB Collection Services, I have told them that they can lawfully undertake collection activity to collect your debt....
>
> ....
>
> Accordingly, the disposition of your account has been scheduled for immediate review and/or further action as deemed appropriate.
>
> ....
>
> Because of your failure to make any effort to pay your lawful debt ... we may find it necessary to recommend to your creditor that appropriate action be taken to satisfy the debt.

Jackson asserts, and Clomon does not dispute, that he personally approved the form letters used by NCB and that he also approved the procedures according to which those letters were sent. Jackson acknowledges, however, that he did not have any direct personal involvement in the mailing of letters to Clomon (or to any other debtor): he never reviewed Clomon's file; he never reviewed or signed any letter that was sent in his name to Clomon; he never gave advice to AFP about how to address particular circumstances of Clomon's case; and he never received any instructions from AFP about what steps to take against Clomon. In short, Jackson never considered the particular circumstances of Clomon's case prior to the mailing of the letters and he never participated personally in the mailing.

In a complaint filed on September 23, 1991, Clomon alleged that Jackson had violated the FDCPA in authorizing NCB to issue the collection letters that she received. The district court denied Jackson's motion for judgment on the pleadings on May 4, 1992. While that motion was still pending, the parties submitted cross-motions for summary judgment. The district court issued a written ruling granting summary judgment for Clomon on May 11, 1992. The court then granted, over objection, Clomon's motion for the maximum statutory damages of $1000. The court found no actual damages. On appeal, Jackson contends that the district court erred

(1) in finding that his conduct violated 15 U.S.C. § 1692e, (2) in awarding statutory damages in the amount of $1,000, and (3) in denying his motion for judgment on the pleadings.

## DISCUSSION

### A. Ruling on Cross–Motions for Summary Judgment

■ The FDCPA establishes a general prohibition against the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The sixteen subsections of § 1692e set forth a non-exhaustive list of practices that fall within this ban. These subsections include:

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

. . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

*Id.* Because the list in the sixteen subsections is non-exhaustive, a debt collection practice can be a "false, deceptive, or misleading" practice in violation of § 1692e even if it does not fall within any of the subsections of § 1692e. A single violation of § 1692e is sufficient to establish civil liability under the FDCPA. *See* 15 U.S.C. § 1692k (establishing civil liability for "any debt collector who fails to comply with any provision of this subchapter").

### 1. The "Least Sophisticated Consumer" Standard

■ The most widely accepted test for determining whether a collection letter violates § 1692e is an objective standard based on the "least sophisticated consumer." This standard has been widely adopted by district courts in this circuit. *See, e.g., Johnson v. NCB Collection Services,* 799 F.Supp. 1298, 1306 (D.Conn. 1992); *Rabideau v. Management Adjustment Bureau,* 805 F.Supp. 1086, 1094 (W.D.N.Y.1992); *Britton v. Weiss,* 1989 WL 148663, at *2, 1989 U.S.Dist. LEXIS

14610, at *6 (N.D.N.Y. Dec. 18, 1989); *cf. Riveria v. MAB Collections, Inc.,* 682 F.Supp. 174, 178 (W.D.N.Y.1988) (using "unsophisticated consumer" standard). This standard has also been adopted by all federal appellate courts that have considered the issue. *See Smith v. Transworld Systems, Inc.,* 953 F.2d 1025, 1028 (6th Cir.1992); *Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir.1991); *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1174–75 (11th Cir.1985); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 778 (9th Cir.1982). *But see Blackwell v. Professional Business Services, of Georgia, Inc.,* 526 F.Supp. 535, 538 (N.D.Ga.1981) (applying "reasonable consumer" standard). We now adopt the least-sophisticated consumer standard for application in cases under § 1692e. In doing so, however, we examine in some detail the purposes served by this standard as well as the extent of the liability that it creates.

The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law. More than fifty years ago, the Supreme Court noted that

[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the honesty of those with whom he transacts business. Laws are made to protect the trusting as well as the suspicious.

*Federal Trade Commission v. Standard Education Society,* 302 U.S. 112, 116, 58 S.Ct. 113, 115, 82 L.Ed. 141 (1937) (finding encyclopedia-selling scheme in violation of Federal Trade Commission Act). We subsequently sounded the same theme in our consumer-protection cases, holding that the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 41 *et seq.,* was not made " 'for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking and the credu-

lous.' " *Charles of the Ritz Distributors Corp. v. Federal Trade Commission,* 143 F.2d 676, 679 (2d Cir.1944), quoting *Florence Manufacturing Co. v. J.C. Dowd & Co.,* 178 F. 73, 75 (2d Cir.1910). This basic principle of consumer-protection law took on its modern formulation several years later, when we held that "[i]n evaluating the tendency of language to deceive, the [Federal Trade] Commission should look not to the most sophisticated readers but rather to the least." *Exposition Press, Inc. v. Federal Trade Commission,* 295 F.2d 869, 872 (2d Cir.1961). In recent years, as courts have incorporated the jurisprudence of the FTC Act into their interpretations of the FDCPA, the language of *Exposition Press* has gradually evolved into what we now know as the least-sophisticated-consumer standard. *See, e.g., Jeter,* 760 F.2d at 1174–75; *Baker,* 677 F.2d at 778.

To serve the purposes of the consumer-protection laws, courts have attempted to articulate a standard for evaluating deceptiveness that does not rely on assumptions about the "average" or "normal" consumer. This effort is grounded, quite sensibly, in the assumption that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes. The least-sophisticated-consumer standard protects these consumers in a variety of ways. First, courts have held that collection notices violate the FDCPA if the notices contain language that "overshadows" or "contradicts" other language that informs consumers of their rights. *See Graziano,* 950 F.2d at 111 (notice of right to respond within thirty days is not effectively communicated when presented in conjunction with contradictory demand for payment within ten days); *see also Swanson v. Southern Oregon Credit Service, Inc.,* 869 F.2d 1222, 1225 (9th Cir.1988) (same). In addition, courts have found collection notices misleading where they employ formats or typefaces which tend to obscure important information that appears in the notice. *See Baker,* 677 F.2d at 778 (required information must be "large enough to be easily read and sufficiently prominent to be noticed"). Finally, courts

have held that collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate. *See Dutton v. Wolhar,* 809 F.Supp. 1130, 1141 (D.Del.1992) ("least sophisticated debtor is not charged with gleaning the more subtle of the two interpretations" of collection notice); *Britton,* 1989 WL 148663, at *2, at *6 (deceptiveness of collection notices "should be assessed in terms of the impression likely to be left on the unsophisticated consumer").

It should be emphasized that in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness. *See Rosa v. Gaynor,* 784 F.Supp. 1, 3 (D.Conn. 1989) (FDCPA "does not extend to every bizarre or idiosyncratic interpretation" of a collection notice but "does reach a reasonable interpretation of a notice by even the least sophisticated"). Indeed, courts have consistently applied the least-sophisticated-consumer standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices. One court has held, for example, that collection notices are not deceptive simply because certain essential information is conveyed implicitly rather than explicitly. *See Transworld Systems,* 953 F.2d at 1028–29 (collection notice that does not expressly inform debtors of right to contest portion of debt is not misleading, because that right is "implicit" in right to challenge entire debt). Other courts have held that even the "least sophisticated consumer" can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care. *See Johnson,* 799 F.Supp. at 1306–07 (finding that "even the least sophisticated debtor knows that a 'Revenue Department' may be part of a department store or other commercial creditor just as it may be a governmental body"); *Gaetano v. Payco of Wisconsin, Inc.,* 774 F.Supp. 1404, 1411 (D.Conn.1990) (approving collection notice even though required disclosures were printed only on the back of the notice, since language on the

front directed consumers to read the reverse).

We do not, of course, have occasion here to adopt other courts' interpretations of the least-sophisticated-consumer standard. But the existence of this substantial body of law demonstrates that the least-sophisticated-consumer standard effectively serves its dual purpose: it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices.

### 2. Violation of Section 1692e

In the proceedings below, the district court based its decision to grant summary judgment on its determination that Jackson had violated subsection (3) of § 1692e. The court determined that Jackson violated subsection (3) when he approved collection letters which falsely implied that he had been retained for the purpose of collecting a particular person's debt. Jackson now contends that the court erred in holding that such conduct violated subsection (3). Specifically, Jackson insists that the letters at issue here complied with subsection (3) because they accurately state that he is an attorney and that the letters are from him. He also argues that the letters' overstatement of the degree of an attorney's involvement in individual debtors' cases does not violate subsection (3) or any other provision of § 1692e. We find these arguments unpersuasive.

■At the outset, it should be emphasized that the use of *any* false, deceptive, or misleading representation in a collection letter violates § 1692e—regardless of whether the representation in question violates a particular subsection of that provision. *See* 15 U.S.C. § 1692e (specifying certain prohibited acts "[w]ithout limiting the general application of the foregoing" language). Given the broad sweep of this provision, it would be possible to uphold the district court's decision to grant summary judgment for the plaintiff even if the facts did not establish a violation of subsection (3). We find, however, that the district court properly concluded that the record establishes a violation of subsection (3). We note that the record also establishes a violation of subsection (10) and of the general ban in § 1692e.

■ First, the use of Jackson's letterhead and signature on the collection letters was sufficient to give the least sophisticated consumer the impression that the letters were communications from an attorney. This impression was false and misleading because in fact Jackson did not review each debtor's file; he did not determine when particular letters should be sent; he did not approve the sending of particular letters based upon the recommendations of others; and he did not see particular letters before they were sent—indeed, he did not even know the identities of the persons to whom the letters were issued. In short, the fact that Jackson played virtually no day-to-day role in the debt collection process supports the conclusion that the collection letters were not "from" Jackson in any meaningful sense of that word. Consequently, the facts of this case establish a violation of subsection (3) of § 1692e. *See Masuda v. Thomas Richards & Co.*, 759 F.Supp. 1456, 1460–61 (C.D.Cal.1991) (finding violation of subsection (3) where collection letter falsely implied that attorney had personally reviewed debtor's file); *cf. Anthes v. Transworld Systems, Inc.*, 765 F.Supp. 162, 166–67 (D.Del.1991) (finding no violation of subsection (3) where collection letter was sent directly from attorney's office and attorney reviewed information provided by debt collection agency "to independently determine whether one of his letters should be sent").

■ We also note that the language used in the collection letters was sufficient to cause the least sophisticated consumer to believe that Jackson himself had considered individual debtors' files and had made judgments about how to collect individual debts. The letters stated that Jackson was "suggesting" certain measures be taken "to further implement the collection of your seriously past due account"; that Jackson had received "instructions" from his client "to pursue this matter to the furthest extent we deem appropriate";

that Jackson had "told" his client that it could "lawfully undertake collection activity to collect your debt"; and that Jackson had "scheduled" Clomon's debt for "immediate review and/or further action as deemed appropriate." In short, the collection letters would have led many consumers, and certainly the least sophisticated consumer, to believe that an attorney had personally considered the debtor's case before the letters were sent. This language was false or misleading because, as noted above, Jackson played virtually no day-to-day role in the debt collection process—and certainly did not engage in any discussion with NCB or AFP about how to collect Clomon's debt. Consequently, the facts of this case establish a violation of subsection (10) of § 1692e. *See Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25–26 (2d Cir.1989) (finding violation of subsection (10) where collection letter falsely implied that some action would be taken); *see also Gaetano*, 774 F.Supp. at 1415 (finding violation of subsection (10) where defendant attempted to collect a debt when prohibited from doing so by state law).

■ In sum, the facts of this case provide ample grounds for the district court's conclusion that Jackson violated § 1692e. It is clear that Jackson's conduct constituted a violation of subsection (3), which prohibits the false representation that a collection letter is a "communication … from an attorney." The record also establishes that Jackson's conduct constituted a violation of subsection (10), which prohibits "[t]he use of any false representation or deceptive means to collect" a debt from a consumer. Finally, we note that the misrepresentations contained in these letters could also be characterized as violations of the general ban in § 1692e on the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt." [1]

■ In reaching this conclusion, we are mindful of the appellant's concern regarding the economic necessity of mass mailing in the debt collection industry. It is apparent that mass mailing may sometimes be the only feasible means of contacting a large number of delinquent debtors, particularly when many of those debtors owe relatively small sums. But it is also true that the FDCPA sets boundaries within which debt collectors must operate. No mass mailing technique is permissible—regardless of how effective it might be—if that technique constitutes a false, deceptive, or misleading communication. As we have found here, the use of an attorney's signature on a collection letter implies that the letter is "from" the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent. We have also found here that the use of an attorney's signature implies—at least in the absence of language to the contrary—that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent. In a mass mailing, these implications are frequently false: the attorney whose signature is used might play no role either in sending the letters or in determining who should receive them. For this reason, there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by § 1692e.

**B.** *Ruling on Motion for "Additional Damages"*

■ The FDCPA provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person" is liable to such person. 15 U.S.C. § 1692k. The statute further provides that upon a finding of liability a court

---

**1.** On appeal, Jackson addressed two additional potential bases for the court's summary judgment ruling. Jackson argued (1) that he never violated 15 U.S.C. § 1692j, which forbids the use of forms that create the false impression that anyone other than the creditor is involved in the collection effort, and (2) that he did not violate

the FDCPA in sending collection notices to Connecticut without being admitted to practice in that state. Because the district court's decision to grant summary judgment was proper, we need not consider whether these additional grounds existed for that court's decision.

may award an individual plaintiff actual damages in compensation for the harm suffered as a result of the violation, "additional damages" not to exceed $1,000, and reasonable costs and attorney's fees. *See* 15 U.S.C. § 1692k(a)(1)–(3). In this case, Clomon requested no actual damages and the district court awarded none. The court did, however, grant Clomon's motion for $1,000 in "additional damages." The court also awarded Clomon $2,975 for attorney's fees and $120 for costs. On appeal, Jackson objects only to the award of "additional damages."

■ The decision on whether to award "additional damages" and on the size of any such award is committed to the sound discretion of the district court. *See Piliples*, 886 F.2d at 27 (FDCPA gives district courts "ample discretion" in assessing damages); *see also Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir.1989) (decision to award "additional damages" is "discretionary"). The district court must, however, consider the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the extent to which such noncompliance was intentional, and other relevant factors in deciding the amount of any "additional damages" awarded. *See* 15 U.S.C. § 1692k(b).

■ In arguing that the district court's award of "additional damages" was an abuse of discretion, Jackson contends that his noncompliance with § 1692e was unintentional and in good faith. Jackson asserts that he approved the collection letters at issue here in reliance upon "authoritative interpretations" of the law by the Federal Trade Commission ("FTC") and by the district court in *Howe v. Reader's Digest Association, Inc.*, 686 F.Supp. 461 (S.D.N.Y.1988). This argument is not persuasive. First, the language of § 1692e is,

by itself, sufficient to make it clear that these collection letters violated the FDCPA. Section 1692e establishes a broad ban on all false and misleading means of debt collection, and it is clear that these letters misrepresented the nature of Jackson's involvement in the debt collection process. Second, the fact that the FTC received copies of these letters and expressed no disapproval of them is not evidence that the FTC "authoritatively interpreted" the letters as lawful or even that the FTC gave the letters its "tacit approval." [2] On the contrary, as the defendant himself acknowledged in a deposition in this matter, the FTC routinely receives copies of letters such as these without issuing statements evaluating the letters' lawfulness. As an attorney responsible for ensuring compliance with laws enforced by the FTC, Jackson should have been familiar with this well-established practice and therefore cannot contend that he believed the FTC's silence indicated approval of these letters. Finally, the decision in *Howe v. Reader's Digest Association, Inc., supra*, does not state or imply that the practices at issue here would be permitted by the FDCPA. The *Howe* decision does hold that a debt collector can rely on the records of a creditor in determining whether to send collection letters. *See id.* at 467. But nothing in that decision releases or purports to release an attorney from the obligation to make *some* determination about a debtor's account prior to the issuance of a collection letter bearing the attorney's signature. More to the point, nothing in that decision releases or purports to release any debt collector from the obligation under § 1692e not to use false or misleading communications as a debt-collecting device.

In sum, we find sufficient grounds for the district court's conclusion that Jackson knew or should have known that these

---

**2.** The record indicates that copies of these notices were provided to the FTC by AFP, the magazine subscriptions company that employed Jackson to collect Clomon's debt. Although the evidence in the record is incomplete, it appears that AFP provided the notices as part of an agreement arising out of an investigation of AFP by the FTC for possible violations of the FDCPA. Jackson makes no attempt to describe the circumstances of this agreement, and he provides no evidence that the agreement entailed any review or evaluation of the notices by the FTC—much less any action or inaction of the FTC that could be said to confer an imprimatur on these collection letters.

collection letters violated § 1692e. For that reason, the court's decision to award statutory damages of $1,000 was amply justified.

### C. Ruling on Motion for Judgment on the Pleadings

Jackson also challenges so much of the judgment as reflects the district court's denial of his motion for judgment on the pleadings. Although we agree that the pleadings here were scant, the district court's refusal to dismiss the action was not an abuse of discretion. In any event, the undisputed facts as presented on the summary judgment motion served as a basis to deem the complaint amended to conform with the proof pursuant to Fed. R.Civ.P. 15(b).

### CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.