Maya GOLUBEVA, on behalf of
herself and all others similarly
situated, Plaintiff,

v.

GC SERVICES LIMITED
PARTNERSHIP,
Defendant.

No. 10 Civ. 2137(BMC).

United States District Court,
E.D. New York.

Dec. 29, 2010.

David M. Schultz and Todd P. Stelter, Hinshaw & Culbertson, LLP, Chicago, IL; and Concepcion A. Montoya, Hinshaw & Culbertson, LLP, New York, NY, for Defendant.

Adam J. Fishbein, for Plaintiff.

## MEMORANDUM DECISION AND ORDER

COGAN, District Judge.

Plaintiff commenced this class action against defendant collection agency for various violations of the Fair Debt Collection Practices Act ("FDCPA") in connection with three collection letters she received from defendant for a debt she owed to Citibank. Plaintiff alleged that these three letters individually, and collectively, constituted a "false representation or deceptive means to collect or attempt to collect any debt." *See* 15 U.S.C. § 1692e and 1692g. After discussing plaintiff's claims with the parties at the initial status conference, plaintiff filed an Amended Complaint.

Thereafter, defendant filed a motion to dismiss plaintiff's Amended Complaint. In response to defendant's motion, plaintiff sought leave to file a Second Amended Complaint in order to "set forth in more particularity some of the factual bases for some of the violations set forth ... [and] [i]n addition, plaintiff would break down with more particularity which sections of the FDCPA apply to which factual allegations." This Court granted plaintiff leave to file a Second Amended Complaint and denied defendant's motion as moot.

Defendant then moved to dismiss plaintiff's Second Amended Complaint. This Court denied defendant's motion on the basis that plaintiff had alleged sufficient facts to state a claim that the "*series* of letters is deceptive and misleading" under the FDCPA.

On November 2, this Court held a status conference in this case. At this conference, defendant clarified that the debt in this case is owned by Citibank, that Citibank applies interest to the account and adjusts the balance owed, and that it is merely a third-party collector. Defendant explained that all three letters that were sent to plaintiff reflected the actual amount owed as of the date of the letter; however, the balance might not have changed from letter to letter because its schedule for sending collection notices does not necessarily comport with the cycle in which Citibank adjusts a particular client's account.

The parties went on to discuss plaintiff's claims and the Court highlighted plaintiff's continued inability to clearly set forth what constituted specific violations of the FDCPA. This discussion ultimately led to plaintiff abandoning her claims as to the first two letters and pursuing a single claim based on the third letter. In the Minute Entry for this conference, the Court memorialized this discussion as follows:

> The parties agreed that the sole issue in this case is whether the August 10, 2009 letter, which contains a settlement offer in the amount of 70% of the purported outstanding debt and language that is substantially similar to the "safe harbor" language set forth in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000), violates 15 U.S.C. 1692e and 1692e(10) of the Fair Debt Collection Practices Act on its face.

Before the Court is defendant's motion to dismiss plaintiff's sole remaining claim, pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons stated below, defendant's motion is granted.

## STANDARD OF REVIEW

### I. Motion to Dismiss

"In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007); *accord Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009)). In other words, a complaint must contain factual allegations to support the legal conclusions and the factual allegations must "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950.

The Second Circuit has explained that under the *Twombly* standard, a Court's inquiry under Rule 12(b)(6) should be "guided by two working principles." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009) (quoting *Iqbal*, 129 S.Ct. at 1949) (internal quotation marks omitted). "First, although a court must accept as true all of the allegations contained in a complaint,

that tenet is inapplicable to legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal,* 129 S.Ct. at 1949) (internal quotation marks omitted, alteration in original). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal,* 129 S.Ct. at 1950) (internal quotation marks omitted, alteration in original). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 129 S.Ct. at 1950.

## II. Fair Debt Collections Practices Act

█ In the Second Circuit, courts use the "least sophisticated consumer" test, in determining whether debt collection letters are deceptive or misleading, and therefore, violate the FDCPA. *Clomon v. Jackson,* 988 F.2d 1314, 1318–19 (2d Cir.1993). The purpose of this standard is to "ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* at 1318. The test also serves the dual purpose of protecting all consumers while also "protect[ing] debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* at 1320.

As a result, "courts have consistently applied the least-sophisticated-consumer standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices." *Id.* at 1319. For even the least sophisticated consumer is "presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Greco v. Trauner, Cohen & Thomas, L.L.P.,* 412 F.3d 360, 363 (2d Cir.2005) (quoting *Clomon,* 988 F.2d at 1319).

## DISCUSSION

█ The third letter defendant sent to plaintiff, dated August 10, 2009, sets forth the total balance due as of that date and includes a settlement offer. The settlement offer provides:

> Our client has authorized us to offer you the opportunity to settle your account, you can pay 70% of the total amount due and our client will consider this account settled. To take advantage of this offer, contact our office or mail your remittance, in the form of a cashier's check or money order, in the amount of 13245.81. Please note that this letter does not reduce your rights as stated on the reverse side of this letter. ... Please make your check payable to Citibank (SD), N.A. and return it with this notice to the post office box listed above.
>
> IMPORTANT: This offer only pertains to the referenced account for the client and balance shown above.

The balance due is listed as $18,922.59 with an asterisk. The asterisk refers to a disclaimer on the bottom of the first page which indicates:

> As of the date of this letter, you owe $18,922.59. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you.

This disclaimer mirrors the "safe harbor" language proposed by the Seventh Circuit Court of Appeals in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.,* 214 F.3d 872 (7th Cir.2000),

for debt collectors to include in their collection letters to warn a debtor that the amount owed may increase over time.

Plaintiff contends that the inclusion of this "safe harbor" language in the settlement offer confuses the least sophisticated consumer concerning the offer to settle; namely, whether the 70% offer is for the amount stated, or another amount that may increase over time. In support of her claim, plaintiff notes that: (1) the "safe harbor" language suggests that the total amount due will be subject to further interest, late charges, and other charges; and (2) there is no date certain as to how long the offer is available.[1]

Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt .. [including] [t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). "A debt collection letter can be deceptive within the meaning of section 1692e(10) if: (1) the terminology used is vague or uncertain; or (2) it can reasonably be read to have at least two different meanings, one of which is inaccurate." *Pifko v. CCB Credit Servs., Inc.,* No. 09–cv–3057, 2010 WL 2771832, *4 (E.D.N.Y. July 7, 2010) (internal citations omitted).

Here, plaintiff is not alleging that the settlement offer or "safe harbor" language are false, or that the inclusion of one overshadows or contradicts the other. Rather her argument is that because the "safe harbor" language warns a consumer that the total *balance* on the account may increase, a consumer can be confused as to the total amount of the *settlement offer.*

First, the mere fact that defendant has included both the disclaimer and the settlement offer in the same communication, does not automatically render the letter misleading. *See Soffer v. Nationwide Recovery Systems, Inc.,* No. 06–cv–435, 2007 WL 1175073, *5 (E.D.N.Y. April 19, 2007) ("Merely presenting a consumer with an option to resolve a debt by accepting a settlement offer does not in any way blunt the effectiveness of [other notices in the letter] ...."); *see also Dupuy v. Weltman, Wienberg & Reis Co.,* 442 F.Supp.2d 822, 828 (N.D.Cal.2006) (analyzing the applicability of the "safe harbor" language in the context of a settlement letter); *Sonmore v. Checkrite Recovery Servs., Inc.,* 187 F.Supp.2d 1128, 1137 (D.Minn.2001) (discussing the "safe harbor" language and noting that once the debt collector has explicitly set forth the amount owed, it is free to offer to settle the debt).

Second, when looking to the actual substance of the letter, this Court fails to see how it is deceptive. The letter specifically indicates that the "safe harbor" language is a disclaimer that refers to the total balance due—not the settlement offer. In addition, the letter not only indicates that the settlement offer is for 70% of the total amount due, but it also sets forth the exact amount plaintiff would have to pay—$13,245.81. Thus, even if the "safe harbor" language rendered the statement "70% of the total amount due" vague or uncertain, that uncertainty is eliminated by defendant's specific inclusion of what amount constitutes 70%.

■ Moreover, even the least sophisticated consumer would not be misled by the fact that there is no expiration date provided for the settlement offer. It is well-

---

**1.** Since plaintiff has abandoned her claims regarding the first two letters and is only asserting that the third letter violates Section 1692e(10) on its face, this Court will not consider the first two letters in determining whether the third letter violates the statute.

settled that where a specific time period is not specified, the power to accept an offer terminates after the lapse of a reasonable amount of time. *See* RESTATEMENT (SECOND) OF CONTRACTS § 41. Nothing in this letter suggests otherwise. The settlement offer specifically referenced that this offer only pertains to the balance shown above, and directs the recipient to mail the $1,3245.81 payment "with this notice" to the address provided. The FDCPA does not require debt collectors to offer settlements, or set forth what terms must be included in an offer. In fact, courts have been more inclined to find that a settlement offer is deceptive where it contains a specific termination date. *See Dekoven v. Plaza Assoc.,* No. 05 C 3462, 2006 WL 2849700, *3 (N.D.Ill. Sept. 29, 2006) (citing cases for the proposition that settlement offers have been found to violate FDCPA where the offer contains language that creates a false sense of urgency or finality).

Plaintiff is essentially seeking to use defendant's attempts at full disclosure against it, by grasping at straws to find any possible language that could be "confusing" and arguing that it as an FDCPA violation. This statute was not designed to provide monetary awards to creative plaintiffs, or to require debt collectors to disclaim away every possible term and interpretation. It simply forces debt collectors to refrain from using false, deceptive or misleading practices. Accordingly, defendant's [26] motion is granted and the case is dismissed.

**SO ORDERED.**