DEBRA ANN LIVINGSTON, Circuit Judge,
concurring in part and dissenting in part:
Finding “abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors,” 15 U.S.C. § 1692(a) (emphasis added), Congress enacted the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., (“FDCPA” or “Act”), “to eliminate [such] practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers.” Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA 559 U.S. 573, 130 S.Ct. 1605, 1608, 176 L.Ed.2d 519 (2010). To this end, the FDCPA imposes civil liability for prohibited debt collection practices on debt collectors — those who *111 “regularly colleet[ ] or attempt[ ] to collect ... debts owed or due or asserted to be owed or due another.” 15 U.S.C. § 1692a(6). The Act does not, by its terms, impose liability on creditors. See Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 282, 235 (2d Cir.1998); see also Schmitt v. FMA Alliance, 398 F.3d 995, 998 (8th Cir.2005) (noting the distinction between creditors and debt collectors “is fundamental to the FDCPA, which does not regulate creditors’ activities”) (quoting Randolph v. IMBS, Inc., 368 F.3d 726, 729 (7th Cir.2004)) (internal quotation marks omitted).
There is one narrow exception to this rule: the Act treats as a debt collector “any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.” 15 U.S.C. § 1692a(6). This “false name” exception thus limits creditor liability to those creditors who collect their own debts while operating under a pseudonym or name of another— perhaps on the theory that such creditors, by freeing themselves of any motivation to protect their own names, have become sufficiently like debt collectors as to merit FDCPA regulation. See Harrison v. NBD Inc., 968 F.Supp. 837, 841 (E.D.N.Y.1997) (noting false name exception addresses circumstance where “natural restraint” exerted on creditors by desire to protect good will not present). At any rate, and whatever the rationale behind the false name exception, creditors are not otherwise subject to the FDCPA, be it under the Act’s plain language or under this Circuit’s case law.
Or at least not until today. The majority now interprets the FDCPA as imposing liability not just on those creditors who deceptively employ false names to collect their own debts, but also on those who take the unremarkable step of hiring a debt collector to collect their debts — so long as that debt collector is, in the majority’s view, insufficiently involved in “bona fide ” collection efforts. See Maj. Op. at 91, 103. Today, the majority’s approach conflates the deception of a creditor who uses a- third party’s name with the deception of a third-party debt collector who falsely claims to be acting as an attorney. More fundamentally, its “bona fide ” test will over time sow ambiguity into an otherwise'straightforward statutory scheme, auguring both difficult line-drawing exercises for future courts and uncertain liability for creditors who contract with debt collectors to collect those creditors’ debts. I therefore respectfully dissent from the majority’s determination that the district court erred in granting summary judgment on Plaintiffs-Appellants’ FDCPA claim. I concur in the judgment that The Money Store is not a “creditor” under the Truth in Lending Act, 15 U.S.C. § 1601 et seq.
L
The FDCPA defines “debt collector” as “any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.” 15 U.S.C. § 1692a(6). Failure to comply with the Act’s requirements exposes such persons to civil liability. See id. § 1692k(a). One such requirement is that a debt collector “may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.” Id. § 1692e. This includes “[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney.” Id. § 1692e(3).
In contrast, creditors, defined in relevant part as persons “who offer[ ] or ex *112 tend[ ] credit creating a debt or to whom a debt is owed,” id. § 1692a(4), are not regulated by the FDCPA and are not subject to liability under the Act for their own debt collection practices. The only exception is when creditors collect debts using the name of another, which then classifies them under the Act as debt collectors:
The term “debt collector” ... includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.
Id. § 1692a(6).
The FDCPA further provides that “flat-raters” — third persons who assist a creditor in using a false name by “providing a form which creates the false impression that someone (usually a collection agency) besides the actual creditor is ‘participating’ in collecting the debt,” White v. Goodman, 200 F.3d 1016, 1018 (7th Cir.2000) — are also liable:
(a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.
(b) Any person who violates this section shall be liable to the same extent and in the same manner as a debt collector is liable under section 1692k of this title for failure to comply with a provision of this subchapter.
15 U.S.C. § 1692j.
II.
As relevant here, plaintiffs Lori Jo Vincent, Ruth Ann Gutierrez, and Linda and John Garrido brought a putative class action against The Money Store on behalf of themselves and all others similarly situated alleging violations of the FDCPA in “attempting to collect amounts purportedly owed on residential home equity loans.” J.A. 33-34. The record is devoid of evidence, however, that The Money Store itself ever communicated with any of the named plaintiffs regarding their loan defaults, much less that it attempted to collect money from them “using any name other than [its] own.” 15 U.S.C. § 1692a(6). Instead, each plaintiff received a letter from Moss, Codilis, Stawiar-ski, Morris, Schneider & Prior, LLP (“Moss Codilis”). These letters informed each debtor of his or her default, noting variously that Moss Codilis had been “retained,” “authorized,” or “designated” to contact the debtor regarding the status of the account.[1] As required by the FDCPA, see 15 U.S.C. § 1692g(a)(4), the letters further advised the debtors that if they disputed the debt in writing within 30 days of receipt, Moss Codilis would provide verification of the debt. Also as required by the FDCPA, see id. § 1692g(a)(5), the letters advised that Moss Codilis would inform the debtors of the name and address of the original creditor upon timely written notice. The breach letters provided contact information for both Moss Codilis and The Money Store, referring recipients to Moss Codilis in connection with the above-referenced notifications, among other things, and generally referring debtors to The Money Store for the purpose of addressing payment.
Moss Codilis prepared and sent these letters pursuant to an April 1997 agreement between it and The Money Store. In *113 the Letter of Agreement, Moss Codilis principally agreed to prepare and- send breach notification letters on a monthly basis to borrowers who had defaulted on their mortgage loans. The firm further agreed to provide a “systems person or persons” to facilitate the transfer of data from The Money Store to Moss Codilis for use in generating the breach letters and to designate a contact person (“Operations Manager”) to address “questions, suggestions, or areas of concern” and to assist The Money Store in developing periodic training courses for The, Money Store’s own staff. Moss Codilis. also agreed to indemnify The Money Store in connection with the breach letter program “for any losses incurred resulting from the violation of an existing federal or state statute and/or regulations.”
The Money Store, in turn, committed in the Letter of Agreement to provide Moss Codilis “with access to books, records, databases, investor guidelines, and files necessary for the completion of contract duties.” The Money Store reserved the right to “initially and from time to time review and approve sample forms of the breach letters ... based on the format of the breach letter only.” The Agreement memorializes the Money Store’s objectives in connection with its arrangement with Moss Codilis:
1. Meet all federal, state, agency and investor requirements;
2. Reduce [The Money Store’s] costs of handling defaulted loans;
3. Develop process improvements;
4. Reduce losses on defaulted loans;
5.Obtain training for current staff.
Neither party disputes that Moss Codi-lis, with The Money Store’s assistance, drafted template breach letters to comply with applicable state and federal laws; that Moss Codilis thereafter generated over 88,000 breach letters from 1997 through 2000, using information regarding defaulted loans provided by The Money Store; and that the firm had numerous follow-up communications with debtors and their lawyers, both orally and in writing[2] It is further undisputed that Moss Codilis at all relevant times conducted business separately from The Money Store, had its own employees, acted under its own name, and represented many other clients in connection with debt collection services. The record additionally reflects, moreover, that when its breach letters on behalf of The Money Store proved ineffective at prompting debtors to pay monies owed, lawyers affiliated with Moss Codilis often became involved in subsequent legal proceedings on The Money Store’s behalf.
III.
Neither party disputes that Moss Codilis drafted, printed, and mailed letters informing the plaintiffs that they owed money to The Money Store and that they should promptly pay that money back. Nor does either party dispute that these letters provided Moss Codilis’s contact information and that Moss Codilis had follow-up communications with some of the letters’ recipients. Yet despite these undisputed facts, the majority holds that a reasonable fact finder could conclude that Moss Codilis *114 was not collecting or attempting to collect a debt. This counterintuitive result is the product of a conflation of § 1692a(6), the FDCPA provision defining as debt collectors those creditors who employ a false name to deceive debtors that a third party is collecting their debt, and § 1692e(3), which renders liable those debt collectors who deceive debtors about the debt collector’s involvement as an attorney. Only the former type of deception is relevant to the false name exception, and it is simply not present in this case.[3]
According to the majority, § 1692a(6)’s false name exception applies when: “(1) the creditor is collecting its own debts; (2) the creditor ‘uses’ a name other than its own; and (3) the creditor’s use of that name falsely indicates that a third person is ‘collecting or attempting to collect’ the debts that the creditor is collecting.” Maj. Op. at 98. I take no issue with this test, which accurately reflects what the text of § 1692a(6) requires. My disagreement is rather with the majority’s reformulation of it, and in particular regarding its third element: that the use of the third party’s name “falsely indicates” that the third party “is ‘collecting or attempting to collect’ the debts that the creditor is collecting.”
Despite its use of the term, the FDCPA never specifies what activities are sufficient to constitute “collecting or attempting to collect” a debt. Nor, as the majority observes, does the term easily lend itself to a precise definition. See Maj. Op. at 100-01. We need not delineate the outer boundaries of “collecting or attempting to collect” a debt, however, in order to conclude that the false name exception does not apply in this case. For while the FDCPA may not precisely define what does or does not constitute “debt collection,” that does not affect our ability to determine on this record what is potentially misleading — what is potentially “false” — about the use of Moss Codilis’s name in the letters sent to plaintiffs. And that, as the very structure of the FDCPA establishes, simply does not encompass whether Moss Codilis was “collecting or attempting to collect” plaintiffs’ debts.
As the majority notes, what is potentially deceptive about the letters sent to the plaintiffs is their implication that Moss Codilis attorneys had been retained as attorneys to collect the plaintiffs’ debts when in reality Moss Codilis did little more than input plaintiffs’ information into a mass-processed form letter. See Maj. Op. at 96-97 & n. 6. This may violate the FDCPA provision prohibiting debt collectors from using any “false, deceptive, or misleading representation or means in connection with *115 the collection of any debt.” 15 U.S.C. § 1692e; see Clomon v. Jackson, 988 F.2d 1314, 1321 (2d Cir.1993). And this deception (if it occurred) is attributable, at least in part, to the presence of Moss Codilis’s name — clearly that of a law firm — on the letters.
But a debt collector’s misrepresentation of its involvement in collecting a debt as an attorney is different from a creditor’s misrepresentation of its involvement in collecting a debt as a debt collector. Section 1692e suggests as much, as it requires defendants to be “debt collectors” under the Act before they can be liable for misrepresenting their involvement as an attorney in the first place. See 15 U.S.C. § 1692e, e(3). Even if Moss Codilis’s breach letters may have falsely suggested that it was collecting or attempting to collect plaintiffs’ debts as an attorney, such suggestion equates in no way at all with the different proposition that Moss Codilis also falsely claimed that it was collecting or attempting to collect plaintiffs’ debt. For as made evident by the very structure of the FDCPA, the question whether Moss Codilis was collecting or attempting to collect plaintiffs’ debt is separate and apart from the question whether it was involved in that collection in a legal capacity.
Once this is established, it also becomes clear that Moss Codilis’s breach letters did not in fact falsely indicate that Moss Codi-lis was collecting or attempting to collect plaintiffs’ debts. For while the presence of Moss Codilis’s name on the letters may have indicated a number of things, the record establishes that it could have falsely indicated only one thing: Moss Codilis’s involvement in the collection as a law firm. And as explained above, collecting or attempting to collect a debt in a legal capacity is not the same as “collecting or attempting to collect a debt” generally. Consequently, no reasonable fact finder could conclude that the use of Moss Codi-lis’s name falsely indicated that it was collecting or attempting to collect a debt as the third element of the false name exception requires.
That the use of Moss Codilis’s name on the letters did not falsely indicate anything other than its involvement as a law firm is proven ’through a simple hypothetical question: if Moss Codilis’s name did not suggest that it was a law firm, what would have been deceptive or misleading about its presence in the letters? Put differently, what would Moss Codilis’s name have indicated about its involvement in collecting plaintiffs’ debt that was not true? That Moss Codilis drafted the letter? It did. That Moss Codilis mailed out the letter? It did that too. That Moss Codilis was an independent entity, distinct from The Money Store? It was.
Recognizing this difference between involvement as an attorney and involvement in “collecting a debt” also reveals the flaw in the majority’s analysis. The majority, in determining whether Moss Codilis “collected or attempted to collect” a debt, does not attempt to define that term’s exact meaning under the FDCPA. Rather, it notes that under this Circuit’s holding in Maguire v. Citicorp Retail Services, Inc., 147 F.3d 232 (2d Cir.1998), if a third party sells its letterhead to a creditor who then mails the letters to its debtors — that is, flat-rating — the third party has not engaged in debt collection. See Maj. Op. at 101 (citing Maguire, 147 F.3d at 235). It then determines that “[mjerely changing the return address” from the creditor’s to the third party’s “does not alter the force of Maguire because it does not change whether the letter misleads consumers, which we have explained is the statutory touchstone for all aspects of the FDCPA, including the false name exception.” Maj. *116 Op. at 101 (citing Maguire, 147 F.3d at 286).
What this analysis ignores is that the letter in Maguire and the letters in this case are deceptive for different reasons. In Maguire, the letters falsely suggested that their sender was someone other than the creditor; here, the letters may falsely suggest that the sender, Moss Codilis, was involved in collection as an attorney. The difference between this case and Maguire, therefore, is more than “merely changing the return address”: it is changing the return address and changing the name on the letterhead to that of a law firm. As mentioned above, if Moss Codilis’s name did not suggest that it was a law firm, then the use of its name in the breach letters would not falsely indicate anything — Moss Codilis did, after all, draft and mail the letters. In Maguire, meanwhile, even though the third party’s name did not suggest that it was a law firm, its presence on the letters still suggested that a third party had sent them — which it had not — thus rendering the letters inherently deceptive.[4] All told, once the issue of Moss Codilis’s role as an attorney is separated out, the distinction between this case and Maguire does not appear “hyper-technical,” as the majority argues, but wholly logical.[5]
Further supporting a distinction between this case and Maguire is that the FDCPA draws the exact same distinction in § 1692j, the flat-rating provision. That section’s language clearly anticipates that a flat-rater does not itself communicate with debtors. To the contrary, § 1692j states that a flat-rater “design[s], compile[s], and fumish[es]” deceptive forms knowing that they “[will] be used ” to create the false belief that someone other than the creditor is participating in the collection of a debt. Id. § 1692j(a) (emphases added). Notably, a flat-rater does not “send” the forms to the debtor, nor is the flat-rater the one that actually “uses” the forms to deceive the debtor. This is all in addition, of course, to § 1692j’s admonition that whoever’s name is on the deceptive form must not also be participating in the debt collection. Id.
Given the lack of support in either our own decisions or the text of the FDCPA for the conclusion it reaches here, the majority understandably looks to the case law of other circuits. The cases it cites, however, are either inapposite or unpersuasive.[6] While the Seventh Circuit’s opinion *117 in Nielsen v. Dickerson, 307 F.3d 623 (7th Cir.2002), supports the majority’s approach to the false name exception, it also exemplifies the contradictory conclusions that courts reach by conflating § 1692a(6) with § 1692e(3). In Nielsen, the Seventh Circuit determined that the debt collection letter at issue was not really “from” Dickerson as an attorney, and that Dickerson was therefore liable under § 1692e(3); it also determined that the letter was actually “from” Household, the creditor, and that Household was therefore liable under § 1692a(6) for falsely implying third-party involvement. Id. at 638-39. In other words, the panel simultaneously held Dickerson liable as a debt collector and held Household hable for falsely implying the involvement of a debt collector. I do not find this reasoning persuasive.
The Fifth Circuit’s opinion in Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232 (5th Cir.1997), meanwhile, is wholly consistent with my reasoning and stands for the unremarkable proposition that a creditor employing a flat-rater may trigger the false-name exception. Taylor involved a creditor who, while attempting to collect debts itself, used a form letter created by a law firm and bearing that firm’s letterhead and signature. Id. at 1235. Unlike Moss Codilis, the law firm had no involvement in the collection process other than furnishing the letterhead and form. This hence presented an obvious example of flat-rating. The creditor constituted a debt collector under 15 U.S.C. § 1692a(6) because it was using another’s name, and was further liable under 15 U.S.C. § 1692e(3) because it falsely implied that its collection letter was from an attorney. Meanwhile, the law firm was liable under § 1692j for furnishing the form. Taylor, 103 F.3d at 1237.
The majority departs from this straightforward application of the FDCPA. It articulates its reformulated test for determining whether a creditor has used another’s name so as deceptively to suggest this third party’s involvement in collecting the creditor’s debts as “whether the third party is making bona fide attempts to collect the debts of the creditor or whether it is merely operating as a ‘conduit’ for a collection process that the creditor controls.” Maj. Op. at 103. But this “bona fide ” collection standard appears nowhere in the text of the FDCPA. And unless the majority intends it as simply the inverse of § 1692j’s flat-rating standard — an implausible construction of § 1692j — the “bona fide ” standard creates an odd liability gap within the FDCPA: parties like Moss Co-dilis may be too involved in collection to be flat-raters under § 1692j, but not involved enough to be “actually” collecting or attempting to collect the debts at issue.[7] In *118 other words, under this “bona fide ” standard, an actual debt collector like Moss Codilis can escape civil liability under the FDCPA by becoming more involved in deceptive collection practices. Surely this was not Congress’s intent.
It is by no means evident why we should interpret the FDCPA, contrary to the most obvious meaning of its terms, to provide such a safe harbor for potentially bad actors. Nor is it evident why, after having previously noted the “economic necessity of mass mailing in the debt collection industry” and observing that such mailings “may sometimes be the only feasible means of contacting a large number of delinquent debtors,” Clomon, 988 F.2d at 1321, we should subject to civil liability creditors seeking to outsource this function to a third party. It is also not evident why courts, in the guise of interpreting the false name exception, should in effect discourage creditors — assumed to be less prone to abusive debt collection practices — from remaining involved in the operations of the debt collection agencies they hire, lest they be deemed themselves to be debt collectors subject to the FDCPA.
The approach announced today will prove vexing, I fear, as future courts struggle with determining whether a creditor, supposedly exempt from the FDCPA and despite always acting in its own name, is nevertheless subject to it merely for hiring a debt collector whose practices are deemed inadequate in some respect.[8] The parameters of the false name exception, heretofore clear, will become unpredictable. Unless and until Congress deems the arrangements between creditors and commercial debt collection agencies to be sufficiently rife with abuse as to merit creditor liability under the FDCPA, courts have no business providing for such liability themselves through questionable interpretations of the false name exception. I respectfully dissent from the majority’s judgment vacating the district court’s grant of summary judgment to The Money Store on plaintiffs’ FDCPA claim.

. As the majority acknowledges, such notices are generally a first step in the debt collection process and are a prerequisite in virtually all residential mortgages to commencing any action to enforce lien rights. See Maj. Op. at 93.

. Among other things, Moss Codilis provided debt verification information to debtors upon request, as well as information regarding the identity of original creditors, as it committed to do in the breach letters. As the majority acknowledges, Christina Nash, who supervised Moss Codilis's work for The Money Store, also testified that she communicated with debtors’ bankruptcy counsel and with attorneys at The Money Store concerning both bankruptcy proceedings and the discharge of debts in bankruptcy. See Maj.Op. at 93.

. The majority asserts that I am conflating the false name exception with the general definition of debt collector, see Maj. Op. at 105 n. 18, but I am not. Moss Codilis is a debt collector for the purpose of the FDCPA’s general definition, which provides (again) that a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.” 15 U.S.C. § 1692a(6). The problem here is not whether Moss Codilis is a debt collector. The problem is that The Money Store cannot be liable for deceptively collecting its own debts using Moss Codilis’s name by virtue of Moss Codilis’s debt collection efforts — as the majority holds — without departing from the most obvious meaning of the FDCPA’s false name exception. That exception holds a creditor liable only when "in the process of collecting his own debts,” the creditor falsely "uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.” 15 U.S.C. § 1692a(6). It does not provide for creditor liability for hiring a debt collector who deceives debtors about its involvement as an attorney.

. Specifically, and as the majority describes, the letters in Maguire were sent by and bore the letterhead of "Debtor Assistance,” which was an in-house collection department for the creditor, Citigroup. Maguire, 147 F.3d at 234-35. We held that the false name exception applied because, even though Debtor Assistance sent the letters, a least sophisticated consumer could think that Debtor Assistance was an entity separate from Citigroup. Id. at 237-38. Thus, the use of the name "Debtor Assistance” was deceptive insofar as it suggested that the letter came from a third party unrelated to Citigroup. Id.

. The majority also provides the hypothetical that "The Money Store sent the letters in sealed, stamped envelopes to Moss Codilis with the note 'please mail.' " Maj. Op. at 101 n. 11. I would concede that, because the presence of a third party's letterhead might suggest that the third party drafted the letter as well as sent it, the false name exception might apply in such a situation. Since, however, it is undisputed that Moss Codilis did draft the letters sent to the plaintiffs, we need not address this issue.

.Nor is the majority's citation of Federal Trade Commission ("FTC”) interpretive guidance helpful. As an initial matter, the language that the majority cites is not interpreting § 1692a(6), but rather § 1692e(14), which prohibits acknowledged debt collectors from “[t]he use of any business, company, or organization name other than the true name of the debt collector’s business, company, or organization.” See FTC, Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 *117 Fed.Reg. 50,097, 50,107 (Dec. 13, 1988). And even if the FTC’s standard did apply, it is not particularly helpful to either party, as it merely adds a new fuzzy standard — that of using a third party as a “conduit” for collection rather than directly involving the third party^ — that is as insufficiently defined as “bona fide ” involvement in assessing creditor liability.

. The majority insists, in a footnote, that its bona fide debt collection standard is the inverse of the flat-rating standard — so that assuming The Money Store is liable pursuant to the false name exception, Moss Codilis's activities amounted to flat-rating. Maj. Op. at 103 n. 16. But the majority is incorrect in arguing that this is anything but an implausible construction of § 1692j. For Moss Codilis did not “furnish [a] form” to The Money Store "knowing that such form would be used to create the false belief in a consumer that a person other than the creditor” was participating in The Money Store's debt collection “when, in fact such person” was "not so participating,” as § 1692j requires. Instead, it is undisputed that Moss Codilis participated in The Money Store's debt collection efforts by, among other things, drafting template breach letters to comply with the laws of the *118 applicable jurisdictions, printing and mailing breach notification letters, and responding to debtor calls requesting debt verification information or the identity of original creditors. This is a practice of mass mailing that we have in the past deemed an "economic necessity ... in the debt collection industry." Clo-mon, 988 F.2d at 1321. With respect, the majority is obfuscating the meaning of debt collection and flat-rating for future courts.

. The majority claims this fear is unwarranted and arises out of a failure to consider its discussion of what the false name exception’s "use” element requires. Maj. Op. at 99 n. 8. With respect, I don't think so. The majority asserts that its use element requires "that there must be some active involvement in the misrepresentation by the creditor” and that the "relevant affirmative action” by The Money Store was "retaining Moss Codilis for the express purpose of sending breach letters that appeared to be attorney collection letters to its debtors.” Maj. Op. at 99. In other words, the majority in its discussion of this element again conflates the deception of a creditor who collects its own debts while using a pseudonym or name of another with the different deception of a third-party debt collector who falsely claims to be acting as an attorney. This approach can only sow confusion into an otherwise straightforward FDCPA provision.